IN THE MATTER OF BRANDON WILLIAM BLUEBIRD

No. 9119DC21

(Filed 7 January 1992)

**1. Parent and Child § 1.5 (NCI3d)— termination of parental rights — Indian child — federal and state provisions applicable — dual burden of proof**

In a proceeding for termination of parental rights involving an Indian child, a dual burden of proof is created in which the state provision, that grounds for termination must be supported by clear and convincing evidence, and federal provisions requiring evidence which justifies termination beyond a reasonable doubt, must be satisfied separately. To meet the federal requirement the trial court must conclude beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child.

**Am Jur 2d, Indians § 8.7; Parent and Child §§ 7, 34.**

**2. Parent and Child § 1.6 (NCI3d)— termination of parental rights — neglect of child — sufficiency of evidence**

Evidence was sufficient to support the termination of respondent's parental rights on the ground of neglect where the evidence tended to show that respondent moved to Oklahoma in 1987 with her boyfriend and left her child with a friend; the child was eventually placed in foster care; respondent made no effort to inquire as to her son's welfare until mid-1988; she did not attempt to contact her son or DSS again until 1990; she failed to respond to the suggestions made by DSS as to how she could regain custody of her son; and she did not avail herself of the services available through the Cherokee Nation to remedy the problems which caused her son to be placed in the custody of DSS until the summer of 1990, six months after the petition to terminate parental rights had been filed. N.C.G.S. § 7A-289.32(2).

**Am Jur 2d, Parent and Child § 35.**

**3. Parent and Child § 1.6 (NCI3d)— termination of parental rights — child in foster care more than 18 months — sufficiency of evidence**

Evidence was sufficient to support the termination of respondent's parental rights on the ground that respondent

willfully left her child in foster care for more than 18 months without reasonable progress being made toward correcting those conditions which led to removal of the child where respondent's only effort was to attend a few parenting classes in the spring of 1990 after having left her child in mid-1987. N.C.G.S. § 7A-289.32(3).

**Am Jur 2d, Parent and Child §§ 28, 35.**

4. **Parent and Child § 1.6 (NCI3d)— termination of parental rights—willful abandonment—sufficiency of evidence**

Evidence was sufficient to support the termination of respondent's parental rights on the ground of willful abandonment where the evidence tended to show that respondent moved to Oklahoma in 1987 and made no efforts to contact DSS or her son, failed to respond to efforts of DSS and was uncooperative with the local social services agency in Oklahoma, moved several times after relocating to Oklahoma without informing anyone of her whereabouts, continued to be unemployed, and refused to end her relationship with a man who beat the child until late in 1989.

**Am Jur 2d, Parent and Child §§ 34, 35.**

5. **Parent and Child § 1.6 (NCI3d)— termination of parental. rights—evidence beyond a reasonable doubt**

Evidence beyond a reasonable doubt supported the termination of respondent's parental rights and thus met the federal burden of proof under the Indian Child Welfare Act where it tended to show that respondent abandoned the child, neglected him and left him in foster care for more than 18 months; furthermore, a licensed psychologist testified as to the child's success in petitioner foster parents' home, the manner in which the foster parents had encouraged the child's Native American heritage by enrolling him in the local Native American daycare center, and the child's living arrangements, happiness, and security.

**Am Jur 2d, Parent and Child §§ 34, 35.**

6. **Parent and Child § 1.5 (NCI3d)— termination of parental rights—indigent parent—appointment of counsel**

The trial court's appointment of counsel sufficiently protected respondent's rights and complied with the statutory

IN RE BLUEBIRD

[105 N.C. App. 42 (1992)]

provision where, at the first hearing to declare the child neglected or abused, the trial judge determined the respondent was not indigent and not entitled to court appointed counsel; after the petition to terminate parental rights was filed, but prior to its adjudication, the court appointed counsel to represent respondent; and this appointment occurred despite respondent's failure to request an attorney or to establish her eligibility for court appointed counsel.

**Am Jur 2d, Parent and Child §§ 7, 34.**

**Right of indigent parent to appointed counsel in proceeding for involuntary termination of parental rights. 80 ALR3d 1141.**

7. **Parent and Child § 1.6 (NCI3d) — termination of parental rights — mistake in order — harmless error**

Because the evidence strongly supported the trial court's order terminating parental rights, error by the trial court in its order terminating parental rights "pursuant to the authority of G.S. 7A-289.32(a)(b)(c)" was harmless, since it was obviously a typographical error or an error of draftsmanship, as subsections (a), (b), and (c) are nonexistent. The more efficient and prudent practice for trial courts is to delineate the specific grounds for termination in parental rights cases.

**Am Jur 2d, Parent and Child §§ 7, 34.**

APPEAL by respondent Donice Daniels from Order entered 18 October 1990 by *Judge William M. Neely* in RANDOLPH County District Court. Heard in the Court of Appeals 9 October 1991.

*O'Briant, O'Briant, Bunch, Whatley & Robins, by Thomas D. Robins; and Randolph County Social Services, by Theresa A. Boucher, for petitioner appellee.*

*J. Howard Redding for respondent appellant.*

COZORT, Judge.

On 29 November 1989, petitioners Alvin and Katherine Radford, the foster parents of the minor child, Brandon William Bluebird, filed a petition to terminate the parental rights of respondents Donice Daniels and William Leon Bluebird. Following a hearing, the trial judge concluded that grounds for termination were proven and the best interests of the child necessitated the termination

of respondents' parental rights. The trial judge concluded that petitioners satisfied the requirements set out in both N.C. Gen. Stat. § 7A-289 (1989) and 25 U.S.C. § 1901 *et seq.*, the Indian Child Welfare Act of 1978. Respondent Donice Daniels appeals. Because we find the evidence supports the decision to terminate the respondent's parental rights, we affirm.

The evidence presented at the termination hearing showed that Brandon William Bluebird was born on 18 September 1985. When he was twenty-three months old, Brandon was taken into custody by the Randolph County Department of Social Services ("DSS") and placed in foster care. This action was taken due to a social worker's discovery that respondent's live-in boyfriend, Leo Grass, had beaten Brandon until his back and legs were covered with black and blue bruises. A few days after Brandon was removed from her home, respondent contacted the DSS about the possibility of Brandon being returned to her if she moved in with a female friend. Such an arrangement was found to be satisfactory in a court hearing on 3 September 1987. On 21 September 1987, Judge Richard M. Toomes adjudged the child to be an abused child within the meaning of N.C. Gen. Stat. § 7A-517(1) (Cum. Supp. 1990) and a neglected child within § 7A-517(21) (Cum. Supp. 1990). The judge found that Mr. Grass physically abused Brandon, and respondent consented to a finding of neglect. Within one week of the adjudication, Ms. Daniels left North Carolina and moved to Oklahoma with Mr. Grass. Brandon remained with his mother's friend, Diane Chambers, until 13 November 1987, when she announced that she was also relocating to Oklahoma. The DSS placed Brandon in foster care with the petitioners, Alvin and Katherine Radford, on that date.

Subsequent to respondent's departure from North Carolina, the DSS learned from a letter sent by the Cherokee Nation that Brandon's putative father was a registered member of the Cherokee Nation of Oklahoma. Brandon was eligible for tribal membership and thus was subject to the Indian Child Welfare Act of 1978, which is codified at 25 U.S.C. § 1901 *et seq.* The Cherokee Nation declined jurisdiction or intervention in the case.

Ms. Janet McFadden, a foster care worker, was assigned by the DSS to periodically review Brandon's case. Ms. McFadden monitored Brandon's progress in the Radford home. She reported that Mr. and Mrs. Radford took a sincere interest in Brandon's heritage and began to become involved in several Native American

IN RE BLUEBIRD

[105 N.C. App. 42 (1992)]

organizations. Ms. McFadden also stated Brandon appeared to be a happy child who felt comfortable living with the Radfords. After several attempts to make contact with Brandon's mother, Ms. McFadden learned that she was still living in Oklahoma with Mr. Grass. Finally, on 5 April 1988, respondent telephoned the DSS. This was her first attempt to inquire about Brandon since September 1987 when she moved to Oklahoma. Respondent conveyed her desire to recover custody of Brandon. Ms. McFadden informed respondent that Brandon could not be sent to live with her until the local Social Services agency approved her home for placement. Respondent wrote Brandon a letter in order to maintain contact. In August 1988, Ms. McFadden received a letter from the Jay County Department of Human Services in Oklahoma. The correspondence indicated that respondent had been uncooperative and difficult to contact. The letter also stated that respondent did not live in a satisfactory home and gave notice that placement with her had been denied. Ms. McFadden relayed this information to respondent in a letter dated September 1988.

Ms. McFadden attempted to contact William Leon Bluebird, Brandon's natural father. Eventually in 1989, Mr. Bluebird was located in Tahlequah, Oklahoma. The Cherokee Department of Human Services completed a home study of Mr. Bluebird and found his living situation to be an unacceptable placement alternative for Brandon.

In early 1989, the DSS contacted Carolyn Coronado, a licensed psychologist who is a Native American, for the purpose of completing an extensive psychological and environmental assessment of Brandon's living arrangement with the Radfords. Ms. Coronado observed Brandon and his foster parents on two separate occasions. One study occurred on 26 and 27 January 1989 and the other was conducted on 15 and 16 February 1990. Additionally, Ms. Coronado observed Brandon while he attended class at the Native American Day Care Center. Ms. Coronado testified that Brandon was developing normally and was receiving excellent care from petitioners. Ms. Coronado's overall assessment of Brandon's placement with the Radfords concluded the child was happy and secure.

Mr. and Mrs. Radford filed their petition to terminate parental rights on 29 November 1989. At the time of the termination hearing, Brandon Bluebird was four and one-half (4½) years old and had been living in the Radford home for two years and eight months.

**IN RE BLUEBIRD**

[105 N.C. App. 42 (1992)]

The trial judge made specific findings of fact and concluded that grounds for termination existed and the termination of parental rights would further the best interests of the child. The trial judge thereupon terminated the parental rights of respondents Donice Daniels and William Leon Bluebird. William Leon Bluebird does not appeal.

[1] Respondent Donice Daniels first argues the evidence is insufficient to support the final order in this case. Under North Carolina law, petitioners are required to prove the existence of grounds for termination by clear, cogent, and convincing evidence. *In re White*, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38, *cert. denied*, 318 N.C. 283, 347 S.E.2d 470 (1986). After the petitioners have met the burden of proof at the adjudicatory stage, the court's decision to terminate the parental rights is discretionary. *In re Parker*, 90 N.C. App. 423, 430, 368 S.E.2d 879, 884 (1988). A finding of any one of the separately enumerated grounds in N.C. Gen. Stat. § 7A-289.32 (1989) is sufficient to support termination of parental rights. *In re Williamson*, 91 N.C. App. 668, 680, 373 S.E.2d 317, 322-23 (1988); N.C. Gen. Stat. § 7A-289.31(a) (1989). If findings of fact based on clear, cogent, and convincing evidence support a conclusion that grounds for termination exist, the order terminating parental rights must be affirmed. *In re Ballard*, 63 N.C. App. 580, 586, 306 S.E.2d 150, 154 (1983), *rev'd on other grounds*, 311 N.C. 708, 319 S.E.2d 227 (1984).

Because of the minor child's status as a Native American, the termination proceeding is also subject to the provisions of the Indian Child Welfare Act. The Act provides:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian Custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f). This provision does not require that the North Carolina statutory grounds to terminate parental rights be proved beyond a reasonable doubt. Rather, a dual burden of proof is created in which the state provisions and federal provisions must be satisfied separately. The state grounds for termination must be supported by clear and convincing evidence, while the federal law requires evidence which justifies termination beyond a reasonable doubt.

IN RE BLUEBIRD

[105 N.C. App. 42 (1992)]

*See In Re Interest of DSP*, 157 Wis.2d 106, 458 N.W.2d 823 (Wis. App. 1990); *In re JRB*, 715 P.2d 1170 (Alas. 1986). To meet the federal requirement, the trial court must conclude beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child.

[2] The evidence in the present case supports the termination of parental rights under both the state and federal statutes. As noted above, only one statutory ground is needed to support a conclusion of termination. The evidence in the present case clearly and convincingly establishes three grounds for the termination of parental rights pursuant to N.C. Gen. Stat. § 7A-289.32(2), (3), and (8) (1989). First, the facts support a finding that respondent has neglected the child under subsection N.C. Gen. Stat. § 7A-289.32(2). We recognize that a prior adjudication of neglect, standing alone, is insufficient to support termination when the parents have been deprived of custody for a significant period of time before the proceeding. *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). In the present case, ample evidence exists independently from that used in the neglect hearing to support a finding of neglect. Respondent moved to Oklahoma in 1987 with her boyfriend and left her child with a friend. Eventually, the child was placed in foster care. Respondent made no effort to inquire as to her son's welfare until mid-1988. She did not attempt to contact her son or the DSS again until 1990. She failed to respond to the suggestions made by the DSS as to how she could regain custody of her son. She did not avail herself of the services available through the Cherokee Nation to remedy the problems which caused her son to be placed in the custody of the DSS until the summer of 1990, six months after the petition to terminate parental rights had been filed.

Similar treatment by a parent has been found to constitute grounds for termination of parental rights. For example, this Court has found that a respondent's lack of involvement with his children for a period of more than two years established a pattern of abandonment and neglect as defined in N.C. Gen. Stat. § 7A-289.32(2) (1989). *In re Graham*, 63 N.C. App. 146, 151, 303 S.E.2d 624, 627 (1983). The Court in *Graham* stated, "[o]ne communication in a two year period does not evidence the 'personal contact, love, and affection that inheres in the parental relationship.'" *Id.* at 151, 303 S.E.2d at 627 (quoting *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982)).

**IN RE BLUEBIRD**

[105 N.C. App. 42 (1992)]

**[3]** The evidence in this case additionally justifies termination under N.C. Gen. Stat. § 7A-289.32(3) (1989), which allows for termination of parental rights when

> [t]he parent has willfully left the child in foster care for more than 18 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 18 months in correcting those conditions which led to the removal of the child or without showing positive response within 18 months to the diligent efforts of a county Department of Social Services, a child-caring institution or licensed child-placing agency to encourage the parent to strengthen the parental relationship to the child or to make and follow through with constructive planning for the future of the child.

Under this subsection, "willfulness" is "something less than willful abandonment." *In re Bishop*, 92 N.C. App. 662, 668, 375 S.E.2d 676, 680 (1989). In *Bishop*, despite efforts on the part of respondent to regain custody of the children, this Court found that the evidence supported a finding of willful abandonment. *Id.* at 668, 375 S.E.2d at 681. The fact that the parent makes some effort to regain custody does not preclude such a finding. *In re Tate*, 67 N.C. App. 89, 94, 312 S.E.2d 535, 539 (1984). Similarly in the present case, respondent made a few efforts by attending parenting classes in the spring of 1990. Despite respondent's attempts, we find respondent's leaving the child in foster care for greater than 18 months to be willful. Furthermore, her meager efforts did not effectuate any improvement in correcting the situation under the circumstances.

**[4]** Finally, as a third alternative, the evidence establishes grounds for termination of parental rights pursuant to N.C. Gen. Stat. § 7A-289.32(8) (1989). This provision allows for termination when "[t]he parent has willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition." *Id.* "Abandonment" has been defined as:

> any wilful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. . . .

> \* \* \* \*

> Abandonment has also been defined as wilful neglect and refusal to perform the natural and legal obligations of parental

care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.

*Pratt v. Bishop,* 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). This subsection's characterization of "willful" abandonment connotes more than the mere neglect implied in N.C. Gen. Stat. § 7A-289.32(3) (1989). "Willful" for the purposes of subsection (8) connotes purpose and deliberation. *In re Adoption of Searle,* 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986). We find the respondent's actions in this case to be purposeful and deliberate. The facts indicate respondent moved to Oklahoma and made no efforts to contact the DSS or her son. She failed to respond to the efforts of the DSS and was uncooperative with the local Social Services agency in Oklahoma. She moved several times after relocating to Oklahoma without informing anyone of her whereabouts, continued to be unemployed, and refused to end her relationship with Mr. Grass, who beat the child, until late 1989. This evidence is sufficient under subsection (8) of the statute to constitute grounds for termination of parental rights.

[5] Turning now to the applicable federal provision, we conclude that the evidence beyond a reasonable doubt supports the termination of respondent's parental rights. At the termination hearing, Ms. Coronado, a licensed psychologist, testified as to Brandon's success in the petitioners' home. She attested to the manner in which the Radfords had encouraged Brandon's Native American heritage by enrolling him in the local Native American day care center. She discussed Brandon's living arrangements and concluded he was happy and secure in the home. This testimony, coupled with the evidence reviewed above, is sufficient to support the trial judge's finding that removing Brandon from his foster home and returning him to respondent's custody would likely result in serious emotional damage to the child. The court also determined that removal from the only safe, stable, environment the minor child has known would inflict serious emotional injury. Our review of the evidence supports an identical conclusion. Consequently, the trial judge did not err in entering judgment terminating respondent's parental rights.

**IN RE BLUEBIRD**

[105 N.C. App. 42 (1992)]

**[6]** Respondent additionally raises on appeal the issue of whether the trial court committed reversible error by basing its decision on facts found by the court prior to the appointment of counsel for respondent. North Carolina law requires the appointment of counsel for an indigent parent in termination of parental rights cases. N.C. Gen. Stat. § 7A-289.23 (1989). The Indian Child Welfare Act, pursuant to 25 U.S.C. § 1912, provides that a parent or Indian custodian shall have the right to counsel in any removal, placement or termination proceeding in any case in which the court determines indigency. At the first hearing on 3 September 1987 to adjudicate the minor child as being neglected or abused, the trial judge determined the respondent was not indigent and not entitled to court-appointed counsel. After the petition to terminate parental rights was filed, but prior to its adjudication, the court appointed counsel to represent respondent. This appointment occurred despite respondent's failure to request an attorney or to establish her eligibility for court appointed counsel. Respondent was therefore represented by counsel at the termination hearing. The trial court's consideration of the events which occurred while respondent was absent from our State is not error. We find that the trial court's appointment of counsel in this case sufficiently protected respondent's rights and complied with the statutory provisions.

**[7]** Finally, respondent argues the conclusions of law were not supported by the findings of fact. Respondent contends the trial judge committed reversible error by failing to state a conclusion of law which articulated the specific statutory grounds for termination. The trial court's Order in part stated, "Grounds exist to terminate the parental rights of the respondents, Donice Daniels and William Leon Bluebird to the minor child, Brandon Bluebird, pursuant to the authority of G.S. 7A-289.32(a)(b)(c)." This conclusion is obviously an error of draftsmanship or a typographical error, since subsections (a), (b) and (c) are nonexistent. The more efficient and prudent practice for trial courts is to delineate the specific grounds for termination in parental rights cases. Nonetheless, because the evidence strongly supports the trial court's conclusion, we find the error to be harmless. The termination of respondent's parental rights of the minor child, Brandon Bluebird, is therefore

Affirmed.

Judges ARNOLD and LEWIS concur.