STROUD, Judge.
 

 Respondent-father appeals from an order terminating his parental rights to S.Z.H. ("Sally").
 
 [1]
 
 Respondent argues that the trial court erred in (1) concluding that he had willfully abandoned Sally under N.C. Gen.Stat. § 7B-1111(a)(7) (2015) ; and (2) concluding that terminating his parental rights was in Sally's best interests without making the requisite written findings of fact. We reverse the order because the evidence was insufficient to support the challenged findings of fact and because the remaining findings of fact cannot support a conclusion of law that respondent abandoned the minor child during the relevant time period.
 

 I. Background
 

 This case arises from a private termination of parental rights action filed by the child's mother against the child's legal and biological father. There were no allegations of neglect, abuse, or dependency under N.C. Gen.Stat. § 7B-1111 and no involvement by any Department of Social Services. On 1 February 2008, Sally was born to petitioner-mother and respondent-father, who were unmarried and living apart in North Carolina. For approximately one to two months, respondent helped care for Sally by watching her during the day while petitioner worked. After respondent's assistance became unreliable, petitioner made other childcare arrangements for Sally during the day. Later in 2008, after petitioner was involved in a car accident and lost access to reliable transportation, petitioner and Sally moved to Virginia to live with petitioner's uncle. In 2009, petitioner and Sally moved to Arizona to help care for petitioner's mother, who had been diagnosed with cancer.
 

 In approximately March 2013, petitioner and Sally moved back to North Carolina, and petitioner arranged for respondent to visit with Sally for roughly two hours. In April 2013, respondent tried to send a $50.00 money order to petitioner. Respondent called Sally during the next several months. In January 2014, respondent asked petitioner if
 
 *344
 
 he could attend Sally's birthday party in February 2014, but petitioner responded that Sally's birthday party was "probably not the best place for [respondent] to see [Sally] after not seeing her" since March 2013. Respondent and Sally have not communicated since January 2014. Sometime while petitioner and Sally were in North Carolina, petitioner married a man.
 
 [2]
 

 On 12 May 2014, petitioner filed a petition for termination of respondent's parental rights alleging that "for more than three (3) years the Respondent has not initiated contact with the minor child[.]"
 
 [3]
 
 In approximately June 2014, petitioner, her husband, and Sally moved to Arizona. On 26 January 2015, the trial court held a hearing on the adjudication and disposition stages. At the conclusion of the hearing, Sally's guardian
 
 ad litem
 
 recommended that the trial court not terminate respondent's parental rights because petitioner and respondent's dispute "essentially boils down to a communication problem." On 23 July 2015, the trial court entered an order concluding that respondent had willfully abandoned Sally under N.C. Gen.Stat. § 7B-1111(a)(7) and that it was in Sally's best interests to terminate respondent's parental rights. On 25 August 2015, respondent gave untimely notice of appeal.
 

 II. Appellate Jurisdiction
 

 We first address whether we have jurisdiction over this appeal:
 

 In civil actions, the notice of appeal must be filed "within thirty days after entry of the judgment if the party has been served with a copy of the judgment within the three day period" following entry of the judgment. N.C.R.App. P. 3(c)(1) (2013); N.C. Gen.Stat. § 1A-1, Rule 58 (2013). The three day period excludes weekends and court holidays. N.C. Gen.Stat. § 1A-1, Rule 6(a) (2013).... Failure to file a timely notice of appeal is a jurisdictional flaw which requires dismissal.
 

 Magazian v. Creagh,
 

 234 N.C.App. 511
 
 , 512-13,
 
 759 S.E.2d 130
 
 , 131 (2014). "[I]n the absence of jurisdiction, the appellate courts lack authority to consider whether the circumstances of a purported appeal justify application of [North Carolina Rule of Appellate Procedure] 2."
 
 Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.,
 

 362 N.C. 191
 
 , 198,
 
 657 S.E.2d 361
 
 , 365 (2008). But "[North Carolina Rule of Appellate Procedure] 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner."
 
 Anderson v. Hollifield,
 

 345 N.C. 480
 
 , 482,
 
 480 S.E.2d 661
 
 , 663 (1997) ;
 
 see also
 
 N.C.R.App. P. 21(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]").
 

 Here, the trial court filed and entered the termination order on Thursday, 23 July 2015. Petitioner served respondent a copy of the order on Tuesday, 28 July 2015. Thus, respondent was served a copy of the termination order within the three-day period, since we exclude the intervening Saturday and Sunday from the three-day period.
 
 See
 

 Magazian,
 

 234 N.C.App. at 512
 
 ,
 
 759 S.E.2d at
 
 131 ; N.C. Gen.Stat. § 1A-1, Rule 6(a), Rule 58 (2015). Accordingly, the last day on which respondent could have filed a timely notice of appeal was Monday, August 24, 2015.
 
 See
 

 Magazian,
 

 234 N.C.App. at 512
 
 ,
 
 759 S.E.2d at
 
 131 ; N.C.R.App. P. 3.1(a); N.C. Gen.Stat. §§ 1A-1, Rule 6(a), Rule 58, 7B-1001(b) (2015). Because respondent did not file a notice of appeal until Tuesday, August 25, 2015, respondent's notice of appeal was untimely. Accordingly, we treat respondent's appeal as a petition for writ of certiorari and issue a writ of certiorari to review the merits of respondent's appeal.
 
 See
 

 Anderson,
 

 345 N.C. at 482
 
 ,
 
 480 S.E.2d at
 
 663 ; N.C.R.App. P. 21(a)(1).
 

 III. Termination Order
 

 Respondent argues that the trial court erred in (1) concluding that he had abandoned
 
 *345
 
 Sally under N.C. Gen.Stat. § 7B-1111(a)(7) ; and (2) concluding that terminating his parental rights was in Sally's best interests without making the requisite written findings of fact.
 

 A. Standard of Review
 

 Termination of parental rights proceedings are conducted in two stages: adjudication and disposition. In the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen.Stat. § 7B-1111(a). This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law. If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary. However, the trial court's conclusions of law are fully reviewable
 
 de novo
 
 by the appellate court.
 

 If the trial court determines that at least one ground for termination exists, it then proceeds to the disposition stage where it must determine whether terminating the rights of the parent is in the best interest of the child, in accordance with N.C. Gen.Stat. § 7B-1110(a). The trial court's determination of the child's best interests is reviewed only for an abuse of discretion. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.
 

 In re A.B.,
 
 --- N.C.App. ----, ----,
 
 768 S.E.2d 573
 
 , 575-76 (2015) (citations, quotation marks, and brackets omitted).
 

 B. Adjudication
 

 i. Findings of Fact
 

 We preliminarily note that in the termination order, the trial court conflated the separate stages of adjudication and disposition, which is most clearly seen in its conclusion of law that "[i]t is in the best interests of the minor child that the parental rights of the respondent-father ... be terminated and statutory grounds exist which justify this termination of the respondent's parental rights." A court's decision to terminate parental rights based solely on the child's best interests violates a parent's constitutional right to custody of his child.
 
 See
 

 Adams v. Tessener,
 

 354 N.C. 57
 
 , 62,
 
 550 S.E.2d 499
 
 , 503 (2001) ("The Due Process Clause ensures that the government cannot unconstitutionally infringe upon a parent's paramount right to custody solely to obtain a better result for the child."). It is imperative that courts conduct these two inquiries separately although they may be conducted in the same hearing.
 
 See
 

 In re Parker,
 

 90 N.C.App. 423
 
 , 430,
 
 368 S.E.2d 879
 
 , 884 (1988). We will thus focus our analysis on the trial court's findings of fact as to the grounds for termination of parental rights without consideration of the many findings of fact regarding petitioner's relocation to Arizona and the child's circumstances there.
 

 Respondent argues that clear, cogent, and convincing evidence does not support the trial court's Finding of Fact 15 and the underlined portion of Finding of Fact 18:
 
 [4]
 

 15. Since the petitioner's return to North Carolina in early 2013, the respondent has not sought any overnight visitation with the minor child nor has he actually exercised any overnight visitation. At all relevant times, the respondent had had the ability and means to maintain communication with the minor child and to arrange or schedule such visitation.
 

 ....
 

 18. The Court finds as a matter of law that statutory grounds do exist to terminate the parental rights of the respondent in that the respondent, specifically for a period of at least six (6) months preceding the commencement of the instant action and generally since April of 2013, has willfully abandoned the minor child.
 
 Since April of 2013,
 
 the respondent has failed to
 
 *346
 
 provide or attempt to provide any financial support for the welfare and benefit of the minor child;
 
 he has also failed to maintain communications to show his love, care or concern for the minor child.
 

 (Emphasis added.) Because petitioner filed the petition on 12 May 2014, we examine the six-month period from 12 November 2013 to 12 May 2014.
 
 See
 
 N.C. Gen.Stat. § 7B-1111(a)(7).
 

 Respondent argues that petitioner never testified that respondent did not request to communicate or visit Sally during this period; rather, respondent argues that the evidence shows the opposite, that respondent tried to call Sally "at least every day or every other day" and asked petitioner if he could attend Sally's birthday party in February 2014.
 

 Petitioner testified to the following events: The last time that respondent had visitation with Sally was in March 2013. Petitioner had never "active[ly] attempt[ed]" to deny respondent visitation and had not made any efforts to deny him communication with Sally. When petitioner and Sally moved back to North Carolina in April 2013, petitioner gave respondent a post office box as her mailing address but did not tell him her physical address. When petitioner changed her phone number in approximately June 2013, she provided her new number to respondent, and respondent called Sally on that number. Petitioner did not testify to how frequently respondent called Sally. When Sally returned to school in 2013, respondent called Sally and told her that he would pick her up to buy her a backpack and some shoes but did not "follow through" on these phone calls. The last time respondent called Sally was in January 2014. Respondent asked petitioner if he could attend Sally's birthday party in February 2014, but petitioner responded that Sally's birthday party was "probably not the best place for [respondent] to see [Sally] after not seeing her" since March 2013. Petitioner expressed her frustration that "[i]t's not that [respondent] doesn't want to put forth the effort, it's just [sometimes there is] no [follow-through] and for seven years [petitioner has] been following through."
 

 Respondent testified to the following events: Since March 2013 when respondent last saw Sally, respondent called Sally "all the time" and tried to call Sally "at least every day or every other day[.]" Sally was available to talk "[u]nless she was at school or ... asleep." Petitioner told respondent that he could not visit Sally unless he sent financial support. Respondent called Sally until January 2014, about a week before Sally's 1 February 2014 birthday, when respondent and petitioner "[f]ell out." Petitioner either refused to answer respondent's calls and texts or would argue with respondent. Respondent continued trying to contact Sally but stopped after about a month of unsuccessful attempts.
 

 In addition, at the conclusion of the hearing, Sally's guardian
 
 ad litem
 
 recommended that the trial court
 
 not
 
 terminate respondent's parental rights because petitioner and respondent's dispute "essentially boils down to a communication problem."
 
 [5]
 
 He noted that "in the beginning" respondent "played a very active role in the child's life" but then that petitioner had "moved around several times, no fault of her own[.]" With petitioner and the child living in Arizona, he noted that "it's hard to say, now that [respondent] has [the] financial ability to see the child[.]" As both petitioner and respondent testified that respondent called Sally during roughly half of the relevant six-month period, from November 2013 to January 2014, and asked petitioner if he could attend Sally's birthday party in February 2014, we hold that clear, cogent, and convincing evidence does not support the trial court's finding that respondent "failed to maintain communications" with Sally during the relevant time. In addition, even during the last half of the six-month period, the evidence tended to show
 
 *347
 
 that respondent attempted to communicate with Sally but petitioner stopped allowing him to contact her. The guardian
 
 ad litem
 
 characterized the issue as a "communication problem" based at least in part upon petitioner's relocations and ultimate move to Arizona. Thus, there is no clear, cogent, and convincing evidence to support the challenged factual findings in Findings of Fact 15 and 18.
 

 ii. Conclusion of Law
 

 Respondent challenges the trial court's conclusion of law that he had willfully abandoned Sally under N.C. Gen.Stat. § 7B-1111(a)(7). This conclusion of law is found primarily in Finding of Fact 18, as noted above:
 

 18. The Court finds as a matter of law that statutory guardian
 
 ad litem
 
 had provided a written report to the court, "in addition to his oral summary of his findings which were presented at the hearing." Since we do not have the written report, we have considered only the oral summary presented at the hearing. grounds do exist to terminate the parental rights of the respondent in that the respondent, specifically for a period of at least six (6) months preceding the commencement of the instant action and generally since April of 2013, has willfully abandoned the minor child....
 

 The only related conclusion of law which is denominated as such is Conclusion of Law 4: "It is in the best interests of the minor child that the parental rights of the respondent-father ... be terminated and statutory grounds exist which justify this termination of the respondent's parental rights."
 

 N.C. Gen.Stat. § 7B-1111(a)(7) provides that the trial court may terminate parental rights upon concluding that the "parent has
 
 willfully
 
 abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen.Stat. § 7B-1111(a)(7) (emphasis added).
 

 We preliminarily note that the petition here failed to allege any particular statutory basis upon which petitioner was seeking to terminate respondent's parental rights. Indeed, the petition did not mention the relevant statute, N.C. Gen.Stat. § 7B-1111, and did not even use any variation of the word "abandon."
 
 See
 

 In re Hardesty,
 

 150 N.C.App. 380
 
 , 384,
 
 563 S.E.2d 79
 
 , 82 (2002) ("While there is no requirement that the factual allegations be exhaustive or extensive, they must put a party on notice as to what acts, omissions or conditions are at issue."). In addition, at the termination hearing, none of the parties nor the trial court ever mentioned the ground of abandonment or even used the word "abandon" or other terms which would indicate a willful abandonment, such as "relinquish" or "surrender." The first time the ground of abandonment is mentioned in the record is in the termination order itself. Nevertheless, we address whether the remaining findings of fact-other than Finding of Fact 15 and the challenged factual portion of Finding of Fact 18, as discussed above-support the conclusion of abandonment as the ground for termination since respondent did not raise the failure of the petition to give adequate notice of the grounds upon which termination was sought at trial or on appeal.
 

 Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child[.] Willfulness is more than an intention to do a thing; there must also be purpose and deliberation. Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence.
 

 ....
 

 A judicial determination that a parent willfully abandoned her child, particularly when we are considering a relatively short six month period, needs to show more than a failure of the parent to live up to her obligations as a parent in an appropriate fashion;
 
 the findings must clearly show that the parent's actions are wholly inconsistent with a desire to maintain custody of the child.
 

 In re S.R.G.,
 

 195 N.C.App. 79
 
 , 84-87,
 
 671 S.E.2d 47
 
 , 51-53 (2009) (emphasis added and citations and quotation marks omitted). In
 
 *348
 

 S.R.G.,
 
 this Court compared the following cases in its discussion of the ground of abandonment:
 

 Compare
 
 [
 
 In re Adoption of Searle,
 

 82 N.C.App. 273
 
 , 276-77,
 
 346 S.E.2d 511
 
 , 514 (1986) ] (finding that the respondent's single $500.00 support payment during the relevant six-month period did not preclude a finding of willful abandonment) and
 
 In re Apa,
 

 59 N.C.App. 322
 
 , 324,
 
 296 S.E.2d 811
 
 , 813 (1982) ("except for an abandoned attempt to negotiate visitation and support, respondent 'made no other significant attempts to establish a relationship with the child or obtain rights of visitation with the child' ")
 
 with
 

 Bost v. Van Nortwick,
 

 117 N.C.App. 1
 
 , 19,
 
 449 S.E.2d 911
 
 , 921 (1994) (finding no willful abandonment where respondent, during relevant six-month period, visited children at Christmas, attended three soccer games and told mother he wanted to arrange support payments)[,
 
 appeal dismissed,
 

 340 N.C. 109
 
 ,
 
 458 S.E.2d 183
 
 (1995) ].
 

 S.R.G.,
 

 195 N.C.App. at 85-86
 
 ,
 
 671 S.E.2d at 52
 
 (brackets omitted). The respondent in
 
 S.R.G.
 
 "visited [the child] eleven times during the relevant time period[,]" "brought appropriate toys and clothes for [the child] to those visits[,]" and "participate[d] in one of the trial proceedings during the relevant time period."
 

 Id.
 

 at 86
 
 ,
 
 671 S.E.2d at 52
 
 . This Court held that although the respondent's "conduct of continuing substance abuse and her failure to follow through with her case plan represent[ed] poor parenting," "her actions during the relevant six month period d[id] not demonstrate a purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to [the child] pursuant to N.C. Gen.Stat. § 7B-1111(a)(7)."
 

 Id.
 

 at 87-88
 
 ,
 
 671 S.E.2d at 53
 
 .
 

 As discussed above, some of the factual portions of Findings of Fact 15 and 18 were not supported by clear, cogent, and convincing evidence.
 
 [6]
 
 The remaining findings of fact address identification of the parties and jurisdictional facts (FOF 14); reasons for petitioner's move to Arizona in 2014 (FOF 5-6); circumstances at the child's birth (FOF 7); petitioner's automobile accident, move to Virginia, and move to Arizona in 2009 (FOF 8-11); petitioner's return to North Carolina and respondent's visit with the child in March 2013 (FOF 12-13); respondent's attempt to send petitioner a money order in April 2013 (FOF 14); and the child's current family relationships and circumstances in Arizona (FOF 19-22). None of these address factual grounds which could support a conclusion of abandonment and some of them address events outside the relevant six-month period preceding the filing of the petition. The only other findings of fact which could potentially support a conclusion of abandonment are the following:
 

 16. The Court specifically notes that there have been no cards or gifts from the respondent to the minor child since early 2013.
 

 17. The Court further notes that prior to the petitioner's filing of the instant action, the respondent made no filings that were initiated by him in this jurisdiction, or any other jurisdiction, concerning the custody of the minor child.
 

 18. ... Since April of 2013, the respondent has failed to provide or attempt to provide any financial support for the welfare and benefit of the minor child[.] ...
 

 Even if these findings are correct, these findings alone are not sufficient to support a conclusion of willful abandonment. We hold that these findings do not demonstrate that respondent had a "purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims" to Sally.
 
 See
 

 id.,
 

 671 S.E.2d at 53
 
 . Following
 
 S.R.G.,
 
 we hold that the trial court erred in concluding that respondent had willfully abandoned Sally under N.C. Gen.Stat. § 7B-1111(a)(7).
 
 See
 

 id.,
 

 671 S.E.2d at 53
 
 . Because abandonment was the sole ground for termination found by the trial court, we hold that the trial court erred in terminating respondent's parental rights, and we reverse the order.
 

 *349
 
 C. Disposition
 

 Respondent also argues that the trial court erred in concluding that terminating his parental rights was in Sally's best interests without making the written findings of fact as required by N.C. Gen.Stat. § 7B-1110(a) (2015).
 
 See
 

 In re J.L.H.,
 

 224 N.C.App. 52
 
 , 59-60,
 
 741 S.E.2d 333
 
 , 338 (2012) (holding that the trial court erred in failing to make written findings regarding relevant criteria under N.C. Gen.Stat. § 7B-1110(a) ). A relevant factor is one that has "an impact on the trial court's decision [.]"
 
 In re D.H.,
 

 232 N.C.App. 217
 
 , 221-22,
 
 753 S.E.2d 732
 
 , 735 (2014). But because we have already determined that the trial court erred in concluding that there were grounds to adjudicate the termination of parental rights under N.C. Gen.Stat. § 7B-1111(a)(7), we need not address respondent's argument regarding the lack of findings as to disposition.
 

 D. Delay in Entry of Order
 

 In addition, we note that the adjudicatory and dispositional hearing took place on 26 January 2015, but the trial court did not enter the termination order until 23 July 2015, roughly six months later. N.C. Gen.Stat. § 7B-1109(e) provides in pertinent part:
 

 The adjudicatory order shall be reduced to writing, signed, and entered
 
 no later than 30 days
 
 following the completion of the termination of parental rights hearing. If the order is not entered within 30 days following completion of the hearing, the clerk of court for juvenile matters shall schedule a subsequent hearing at the first session of court scheduled for the hearing of juvenile matters following the 30-day period to determine and explain the reason for the delay and to obtain any needed clarification as to the contents of the order. The order shall be entered within 10 days of the subsequent hearing required by this subsection.
 

 N.C. Gen.Stat. § 7B-1109(e) (2015) (emphasis added). Regarding the dispositional stage, N.C. Gen.Stat. § 7B-1110(a) similarly provides in pertinent part:
 

 Any order shall be reduced to writing, signed, and entered
 
 no later than 30 days
 
 following the completion of the termination of parental rights hearing. If the order is not entered within 30 days following completion of the hearing, the clerk of court for juvenile matters shall schedule a subsequent hearing at the first session of court scheduled for the hearing of juvenile matters following the 30-day period to determine and explain the reason for the delay and to obtain any needed clarification as to the contents of the order. The order shall be entered within 10 days of the subsequent hearing required by this subsection.
 

 N.C. Gen.Stat. § 7B-1110(a) (emphasis added). Our Supreme Court explained that in the event that a trial court fails to comply with the procedure described above, a party may petition this Court for a writ of mandamus.
 
 In re T.H.T.,
 

 362 N.C. 446
 
 , 456,
 
 665 S.E.2d 54
 
 , 60-61 (2008). "[I]n almost all cases, delay is directly contrary to the best interests of children, which is the 'polar star' of the North Carolina Juvenile Code."
 
 Id.
 
 at 450,
 
 665 S.E.2d at 57
 
 . We note that the trial court violated N.C. Gen.Stat. § 7B-1109(e) and N.C. Gen.Stat. § 7B-1110(a) by entering its termination order roughly six months after the adjudicatory and dispositional hearing.
 

 IV. Conclusion
 

 For the foregoing reasons, we reverse the trial court's order terminating respondent's parental rights.
 

 REVERSED.
 

 Judges BRYANT and DIETZ concur.
 

 [1]
 

 We use this pseudonym to protect the juvenile's identity.
 

 [2]
 

 The record does not indicate the date of their marriage or the husband's name. He was identified in the transcript of testimony only as "Garry (indiscernible) Junior" or "Junior."
 

 [3]
 

 The trial court correctly concluded that North Carolina was Sally's home state at the time petitioner commenced this action.
 
 See
 
 N.C. Gen.Stat. § 50A-201(a)(1) (2013).
 

 [4]
 

 Finding of Fact 18 is actually a mixed finding of fact and conclusion of law. We will address the challenged factual portion here and the remaining factual and legal portions below.
 

 [5]
 

 The record on appeal lacks the trial court's order appointing Sally's guardian
 
 ad litem
 
 pursuant to N.C. Gen.Stat. § 7B-1108 (2013) and the guardian
 
 ad litem's
 
 written report. The trial court mentioned in its order that the guardian
 
 ad litem
 
 had been "duly appointed" and that the guardian ad litem had provided a written report to the court, "in addition to his oral summary of his findings which were presented at the hearing." Since we do not have the written report, we have considered only the oral summary presented at the hearing.
 

 [6]
 

 Finding of Fact 18 is a mixed finding of fact and conclusion of law; we will address one other factual portion of Finding of Fact 18 which was not addressed above.