I.
 
 Background
 

 Respondent-Mother ("Mother") appeals from order and amended order terminating her parental rights as to the minor child, D.E.M., born in November 2011. We note the orders also terminated the parental rights of D.E.M.'s father ("Father"), who has not pursued an appeal. We affirm.
 

 Petitioners are D.E.M.'s paternal grandparents. They were awarded primary legal and physical custody of D.E.M. in a civil custody order entered 14 November 2013.
 
 See
 

 In re D.E.M.
 
 , --- N.C. App. ----,
 
 782 S.E.2d 926
 
 (2016) (unpublished). Although the custody order granted Mother and Father visitation with D.E.M., neither parent exercised their right to visitation after December 2013.
 

 Petitioners filed a petition to terminate the parental rights of Mother and Father on 29 May 2014.
 

 Id.
 

 at ----,
 
 782 S.E.2d at 926
 
 . After a hearing, the trial court concluded that Mother and Father had willfully abandoned D.E.M.,
 
 see
 
 N.C. Gen. Stat. § 7B-1111(a)(7) (2015), and terminated their parental rights by order entered 4 March 2015.
 
 D.E.M.
 
 , --- N.C. App. at ----,
 
 782 S.E.2d at 926
 
 .
 

 Mother appealed. In an opinion filed 1 March 2016, this Court vacated the termination order on the ground that Petitioners lacked standing to bring an action for termination of parental rights under N.C. Gen. Stat. § 7B-1103(a) (2015).
 
 D.E.M.
 
 , --- N.C. App. at ----,
 
 782 S.E.2d at 926
 
 .
 

 Petitioners filed a new petition to terminate Mother's and Father's parental rights to D.E.M. on 8 March 2016. With regard to standing, the petition alleged that D.E.M. "has been in the sole custody of the Petitioners pursuant to an Order entered on November 14, 2013 in Wilkes County File No. 13 CVD 625."
 
 [1]
 
 Petitioners asserted three statutory grounds for termination of Mother's and Father's parental rights: (1) willful failure to pay for D.E.M.'s care, support, and education under N.C. Gen. Stat. § 7B-1111(a)(4) ; (2) dependency under N.C. Gen. Stat. § 7B-1111(a)(6) ; and (3) willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7).
 

 The trial court held a hearing regarding the petition on 13 September 2016, receiving testimony from Petitioners and Mother and a written report from D.E.M.'s Guardian ad Litem ("GAL"). In its order terminating
 the parental rights of Mother and Father,
 
 [2]
 
 the court adjudicated grounds for termination based on Mother's and Father's non-payment of support under N.C. Gen. Stat. § 7B-1111(a)(4) and willful abandonment of D.E.M. under N.C. Gen. Stat. § 7B-1111(a)(7). After considering the dispositional factors in N.C. Gen. Stat. § 7B-1110(a) and the recommendation of the GAL, the court further determined it was in D.E.M.'s best interest to terminate Mother's and Father's parental rights. Mother appeals. Father is not a party to this appeal.
 

 II.
 
 Standard of Review
 

 The standard of review from an order terminating parental rights is well-established:
 

 Termination of parental rights proceedings are conducted in two stages: adjudication and disposition. "In the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)." This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law. "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." However, "[t]he trial court's conclusions of law are fully reviewable
 
 de novo
 
 by the appellate court." "It is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony."
 

 In re C.J.H.
 
 ,
 
 240 N.C. App. 489
 
 , 497-98,
 
 772 S.E.2d 82
 
 , 88-89 (2015) (citations omitted).
 

 The trial court examined respondent's history of sporadic contact with the juvenile in evaluating whether his 2014 requests for visitation were made in good faith. Although the trial court must examine the relevant six-month period
 in determining whether respondent abandoned the juvenile, the trial court may consider respondent's conduct outside this window in evaluating respondent's credibility and intentions.
 
 See
 
 ...
 
 Gerhauser v. Van Bourgondien
 
 ,
 
 238 N.C. App. 275
 
 , 291,
 
 767 S.E.2d 378
 
 , 389 (2014) (considering a party's conduct after determinative date established ... in order to assess "the party's credibility and intentions"). In light of the trial court's findings on respondent's history of sporadic contact with the juvenile, we hold that clear, cogent, and convincing evidence supports the trial court's sub-conclusions ... that respondent failed to make a good faith effort to visit [the child].
 

 Id.
 

 at 503
 
 ,
 
 772 S.E.2d at 91
 
 (citations omitted).
 

 If the trial court determines that at least one ground for termination exists, it then proceeds to the disposition stage where it must determine whether terminating the rights of the parent is in the best interest of the child, in accordance with N.C. Gen. Stat. § 7B-1110(a). The trial court's determination of the child's best interests is reviewed only for an abuse of discretion. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.
 

 In re S.Z.H.
 
 , --- N.C. App. ----, ----,
 
 785 S.E.2d 341
 
 , 345 (2016) (citation omitted). Uncontested findings of fact are deemed to be supported by the evidence and are binding on appeal.
 
 In re H.S.F.
 
 ,
 
 182 N.C. App. 739
 
 , 742,
 
 645 S.E.2d 383
 
 , 384 (2007).
 

 III.
 
 Adjudication
 

 Mother argues the trial court erred in adjudicating the existence of grounds to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(7). We disagree.
 

 Mother challenges the trial court's conclusion that she willfully abandoned D.E.M. pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). Under this provision, the trial court may terminate parental rights if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion [to terminate.]" N.C. Gen. Stat. § 7B-1111(a)(7) (2015). Petitioners filed their petition to terminate Mother's and Father's parental rights on 8 March 2016. Therefore, in reviewing the court's adjudication, we must primarily
 consider Mother's conduct during the period from 8 September 2015 to 8 March 2016. "Although the trial court must examine the relevant six-month period in determining whether respondent abandoned the juvenile, the trial court may consider respondent's conduct outside this window in evaluating respondent's credibility and intentions."
 
 C.J.H.
 
 ,
 
 240 N.C. App. at 503
 
 ,
 
 772 S.E.2d at 91
 
 .
 

 Although the petition mistakenly asserted standing under "N.C.G.S. § 7B-1103(a)(6)," we note that the statute confers standing upon "[a]ny person with whom the juvenile has resided for a continuous period of two years or more next preceding the filing of the petition or motion." N.C. Gen. Stat. § 7B-1103 (2015). The termination order cites to the correct statutory provision establishing Petitioners' standing.
 

 The record on appeal contains both the "Order Terminating Parental Rights" entered on 29 September 2016 and the "Amended Order Terminating Parental Rights" entered on 10 October 2016. Although Mother's notice of appeal is timely as to both orders, we deem the amended order to supersede the original. Accordingly, we confine our review to the "Amended Order Terminating Parental Rights" entered on 10 October 2016.
 

 " 'Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental
 duties and relinquish all parental claims to the child.' "
 
 In re Young
 
 ,
 
 346 N.C. 244
 
 , 251,
 
 485 S.E.2d 612
 
 , 617 (1997) (citation omitted). " 'Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence.' "
 
 In re S.Z.H.
 
 , --- N.C. App. at ----,
 
 785 S.E.2d at 347
 
 (citation omitted). However,
 

 [a] judicial determination that a parent willfully abandoned her child, particularly when we are considering a relatively short six month period, needs to show more than a failure of the parent to live up to her obligations as a parent in an appropriate fashion;
 
 the findings must clearly show that the parent's actions are wholly inconsistent with a desire to maintain custody of the child
 
 .
 

 Id.
 

 (citation omitted).
 

 In support of its adjudication under N.C. Gen. Stat. § 7B-1111(a)(7), the trial court made the following uncontested findings of fact:
 

 4. In May 2013, [Mother and Father] were involved in a domestic violence incident.... [They] voluntarily placed the [D.E.M.] in the physical custody of [ ] Petitioners. [D.E.M.] has been in the exclusive custody of [ ] Petitioners since May 2013.
 

 5. [Mother] sent a text to [ ] Petitioners on May 31, 2013 that indicated that she was going to harm herself. As a result of [Mother's] text, substance abuse on the part of both [Mother and Father], and the unstable relationship between [Mother and Father], [ ] Petitioners filed a custody action and obtained a temporary custody order for [D.E.M.].
 

 6. Following a hearing on November 14, 2013, the Court granted [ ] Petitioners full legal and physical custody of [D.E.M.].
 

 7. Prior to entry of the November 2013 Order, the Court had granted [Mother and Father] supervised visitation. Neither parent exercised any supervised visitation with [D.E.M.] from June 2013 through November 2013.....
 

 8. The November 2013 Order also granted [Mother and Father] visitation with [D.E.M.]. The visits were to be supervised by [ ] Petitioners for an initial sixty-day period. Thereafter the visits were to transition to unsupervised visitation.
 

 9. [Mother] had one visit with [D.E.M.] on December 22, 2013. [She] did not feel comfortable with [ ] Petitioners' supervision and she did not pursue any further visits.
 
 Neither [Mother nor Father] exercised any visitation whatsoever with [D.E.M.] after December 2013
 
 , even though the visitation schedule was to transition to unsupervised visits within a reasonable period of time.
 

 10.
 
 Neither [Mother nor Father] has ever paid child support for the benefit of [D.E.M.] or offered any type of support for his case.
 
 [Mother and Father] did send Christmas gifts to [D.E.M.] in 2014. Both [Mother and Father] have been gainfully employed and have had the ability to provide support for the benefit of [D.E.M.].
 

 11. A prior termination of parental rights proceeding was filed against [Mother and Father] in 2014. The decision in the prior proceeding was vacated by the North Carolina Court of Appeals on March 1, 2016....
 
 During the entire time that the prior action was pending, [Mother and Father] did not pursue any attempts to contact [D.E.M.]
 
 .
 

 12. [ ] Mother saw [D.E.M.] and Petitioner [grandfather] at a grocery store in May 2015 and spoke to the child. It did not appear that [D.E.M.] knew her.
 

 13. The Court previously found [Mother's] excuses for not attempting to visit with [D.E.M.] unpersuasive. [Her] reasons for not attempting to visit with [D.E.M.] are even less persuasive now given the passage of time.
 

 The trial court also "found:"
 

 15. [Mother's and Father's] conduct with respect to the minor child evinces a settled purpose to forego their
 parental duties. They have failed and refused to perform the natural and legal obligations of parental care and support and as such they have abandoned the minor child since he has been in Petitioners' care, custody and control.
 

 Mother argues that Finding 15 is actually a conclusion of law, and also argues that even
 if it is considered to be a finding of fact, it is not supported by the record evidence. The trial court concluded that Petitioners had shown "by clear, cogent, and convincing evidence" that Mother and Father "have willfully abandoned" D.E.M. under N.C. Gen. Stat. § 7B-1111(a)(7).
 

 Mother argues she cannot be deemed to have willfully abandoned D.E.M. during the six-month period from 8 September 2015 to 8 March 2016 because, until this Court vacated the order in its opinion filed in
 
 In re D.E.M.
 
 on 1 March 2016,
 
 [3]
 
 she was bound by the trial court's prior order terminating her parental rights. Mother notes that "the trial court did not grant [her] visitation during the pendency of the initial appeal in this case" or stay the termination order pending her appeal, as authorized by N.C. Gen. Stat. § 7B-1003. Mother contends that "[w]ithout an order from the trial court granting visitation pursuant to [N.C. Gen. Stat.] § 7B-1003 or an entry of a stay by the Courts, [her] failure to contact D.E.M. was not willful."
 

 We find Mother's argument without merit. The evidence and the trial court's findings show that Mother made no effort to contact D.E.M. and paid nothing toward his support during the six months at issue in N.C.G.S. § 7B-1111(a)(7). While it is correct that the prior order terminating her parental rights remained in effect during this period, there is no evidence that Mother sought to stay the order while her appeal was pending pursuant to N.C.G.S. § 7B-1003(a), or otherwise requested visitation with D.E.M. from the trial court or Petitioners.
 
 See
 
 N.C. Gen. Stat. § 7B-1003(b) (2015). To the contrary, the evidence shows Mother made no attempt to have any form of contact with D.E.M. While Mother now suggests she "was
 
 prohibited
 
 from contacting and visiting D.E.M.," no such prohibition was imposed. (Emphasis added). Although Mother's options were limited after she was divested of her parental rights, she was not absolved of the requirement that she take whatever measures possible to show an interest in D.E.M. Regarding an incarcerated father, this Court had held: "Although his options for showing affection are greatly limited, the respondent will not be excused from showing
 interest in the child's welfare by whatever means available. The sacrifices which parenthood often requires are not forfeited when the parent is in custody."
 
 Whittington v. Hendren (In re Hendren)
 
 ,
 
 156 N.C. App. 364
 
 , 368,
 
 576 S.E.2d 372
 
 , 376 (2003). Similarly, in the present case, Mother had limited options to interact with D.E.M., yet she still failed to show that she even attempted to exercise any of the options available to her. Mother was not under any type of order restraining her from attempting to contact Petitioners about D.E.M., or sending gifts or letters to D.E.M. through Petitioners. Just as in
 
 Hendren
 
 , Mother's failure to even attempt to show affection for her child through her limited options was evidence that the child had been abandoned.
 
 Hendren
 
 ,
 
 156 N.C. App. at 369
 
 ,
 
 576 S.E.2d at 376-77
 
 .
 

 In addition, "[a]lthough the trial court must examine the relevant six-month period in determining whether respondent abandoned the juvenile, the trial court
 
 may consider respondent's conduct outside this window in evaluating respondent's credibility and intentions
 
 ."
 
 In re C.J.H.
 
 ,
 
 240 N.C. App. at 503
 
 ,
 
 772 S.E.2d at 91
 
 (citation omitted) (emphasis added). Mother has demonstrated almost no interest in D.E.M. since losing custody of him. This Court detailed Mother's lack of interest in its prior opinion in this matter:
 

 On 11 December 2013, following a hearing on the merits on 14 November 2013, the district court issued an order awarding petitioners primary legal and physical custody of [D.E.M.] As part of the court's custody order, [Mother] was granted the following visitation rights: "For the first sixty (60) days from the date of this hearing, [Mother] may have supervised visitation at [Petitioners'] home every other Sunday afternoon from 1:30 PM until 4:30 PM. If these visits go well and provided that there are no problems then for thirty (30) days after that [Mother] shall have unsupervised visitation with the minor child every other Sunday from 1:30 PM
 

 until 6:30 PM. Following that initial unsupervised period, and if those visits go well and provided that there are no problems, [Mother] shall have unsupervised overnight visitation every third weekend of the month from Friday at 6:00 PM until Sunday at 6:00 PM."
 

 On 29 May 2014, [P]etitioners filed a petition seeking the termination of [Mother]'s parental rights. Petitioners noted that at all times since [D.E.M.] was placed in their custody, [Mother] ... knew the street address and phone number of their residence, yet [Mother] "only had contact
 with the child one time since November 14, 2013 and less than a handful of times in total since May, 2013." In addition, at the time the petition was filed, [P]etitioners had not heard from [Mother] since 22 December 2013, which was the only time she visited [D.E.M.] since [P]etitioners were awarded primary custody of him. [Mother has never] paid any support for [D.E.M.] or offered any assistance for his care.
 

 D.E.M.
 
 , --- N.C. App. ----,
 
 782 S.E.2d 926
 
 . At the 13 September 2016 termination hearing, Petitioner-Grandmother testified:
 

 [T]hrough this whole period, from the time that we first went to court, [Mother and Father] have had visitations. When we first started going to court we communicated through [Petitioner's attorney] to have visitation. At one point, [Mother] wanted to have visitation at playgrounds. We agreed. We have agreed to everything that she requested. But she would never contact us to set up these visits. We never went to any playground. Like I said, she did not show up to Our House [a child abuse and neglect prevention organization], in town. She has come to the one visit [on 22 December 2013].
 

 Petitioner-Grandmother testified that Mother has never contacted her requesting to set up visitation with D.E.M. since that single 22 December 2013 visit, and that Mother has never tried to contact her since a Facebook message Mother sent to Petitioner-Grandmother in February 2014. Petitioner-Grandmother testified that other than a few gifts Mother brought on her 22 December 2013 visit, she has not "sent any type of gifts, cards, correspondence, anything whatsoever," to D.E.M. Mother testified that though she has been continually employed since at least September 2013, she has never sent any money to help support D.E.M.
 

 The trial court's findings show that Mother unilaterally ceased her court-ordered visitation with D.E.M. in December of 2013
 
 and made no further effort to preserve her relationship with D.E.M.
 
 Viewed against this history, the evidence of Mother's ongoing failure to visit, contact, or provide for D.E.M. from 8 September 2015 to 8 March 2016 allows a reasonable inference that she acted willfully.
 
 C.J.H.
 
 ,
 
 240 N.C. App. at 501-03
 
 ,
 
 772 S.E.2d at
 
 91 ;
 
 see also
 

 In re Adoption of Searle
 
 ,
 
 82 N.C. App. 273
 
 , 276,
 
 346 S.E.2d 511
 
 , 514 (1986) ("Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence.");
 
 In re Hughes
 
 ,
 
 74 N.C. App. 751
 
 , 759,
 
 330 S.E.2d 213
 
 , 218 (1985) (Where "different inference[s] may be drawn from the evidence, [the trial court] alone
 determines which inferences to draw and which to reject."). Having made no gesture to assist Petitioners with the support of D.E.M., or to provide D.E.M. with her "presence, love and care ... by whatever means available," we hold that the trial court did not err in concluding that Mother abandoned D.E.M. within the meaning of N.C.G.S. § 7B-1111(a)(7).
 
 In re R.R.
 
 ,
 
 180 N.C. App. 628
 
 , 634,
 
 638 S.E.2d 502
 
 , 506 (2006).
 

 In light of our holding that grounds for termination exist under N.C. Gen. Stat. § 7B-1111(a)(7), we need not review the remaining ground found by the trial court under N.C.G.S. § 7B-1111(a)(4).
 
 C.J.H.
 
 ,
 
 240 N.C. App. at 504
 
 ,
 
 772 S.E.2d at 92
 
 ("Because we hold that the findings of fact support one ground for termination, we need not review the other challenged grounds.
 
 See
 

 In re Humphrey
 
 ,
 
 156 N.C. App. 533
 
 , 540,
 
 577 S.E.2d 421
 
 , 426-27 (2003).").
 

 IV.
 
 Disposition
 

 Mother next claims the trial court abused its discretion in concluding that it was in D.E.M.'s best interests to terminate her parental rights at the dispositional stage of the proceeding.
 
 See
 
 N.C. Gen. Stat. § 7B-1110(a) (2015). She argues the court made an erroneous
 assessment of D.E.M.'s best interests under N.C.G.S. § 7B-1110(a), based on its misunderstanding of North Carolina's adoption laws. We disagree.
 

 "Once a trial court has concluded during the adjudication phase that grounds exist for termination of parental rights, it must decide in the disposition phase whether termination is in the best interests of the child."
 
 In re D.R.F.
 
 ,
 
 204 N.C. App. 138
 
 , 141,
 
 693 S.E.2d 235
 
 , 238 (2010). The trial court's ruling on best interests will only be overturned pursuant to a showing that it abused its discretion.
 
 S.Z.H.
 
 , --- N.C. App. at ----,
 
 785 S.E.2d at 345
 
 . The trial court must consider and make findings about the following criteria, insofar as they are relevant:
 

 (1) The age of the juvenile.
 

 (2) The likelihood of adoption of the juvenile.
 

 (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
 

 (4) The bond between the juvenile and the parent.
 

 (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
 

 (6) Any relevant consideration.
 

 N.C.G.S. § 7B-1110(a).
 

 In assessing the likelihood of D.E.M.'s adoption under N.C.G.S. § 7B-1110(a)(2), the trial court found that "Petitioners have expressed their intentions to adopt [D.E.M.]." While Mother does not dispute the evidentiary support for this finding, she suggests that it "reflects [the court's] misapprehension of law" with regard to Petitioners'
 
 ability
 
 to adopt D.E.M. Specifically, she asserts that Petitioners lack standing to petition for D.E.M.'s adoption under
 
 N.C. Gen. Stat. § 48-2-301
 
 (a), which provides as follows:
 

 A prospective adoptive parent may file a petition for adoption pursuant to Article 3 of this Chapter only if a minor has been placed with the prospective adoptive parent pursuant to Part 2 of Article 3 of this Chapter unless the requirement of placement is waived by the court for cause.
 

 N.C. Gen. Stat. § 48-2-301
 
 (a) (2015). Mother asserts that the 14 November 2013 custody order entered in 13 CVD 625 does not constitute an adoptive placement for purposes of Chapter 48 of our General Statutes.
 
 See
 

 N.C. Gen. Stat. § 48-1-101
 
 (13) (2015) (defining "[p]lacement");
 
 see also
 

 N.C. Gen. Stat. § 48-3-201
 
 (a) (2015) (defining who may place a minor for adoption). Therefore, she contends that "termination of [her] parental rights would make D.E.M. a legal orphan which is not in his best interest."
 

 We find Mother's argument unpersuasive.
 
 N.C. Gen. Stat. § 48-2-301
 
 (a) expressly authorizes a waiver of the requirement of an adoptive placement "for cause." N.C.G.S. § 48-2-301(a). The North Carolina Supreme Court has recognized a trial court's authority to waive the N.C.G.S. § 48-2-301(a) requirement.
 
 In re Adoption of Byrd
 
 ,
 
 354 N.C. 188
 
 , 191-92,
 
 552 S.E.2d 142
 
 , 145 (2001) (where the trial court waived the prospective parent placement requirement for petitioners who filed to adopt a child the following day after the child's birth). Thus, it cannot be said Petitioners lack the ability to obtain standing to adopt D.E.M. Moreover, in the present case, Petitioners are D.E.M.'s grandparents and legal custodians; they have raised D.E.M. since he was eighteen months old; and they wish to adopt him. By all accounts, D.E.M. is thriving in Petitioners' home. D.E.M.'s GAL recommended the termination of Mother's and Father's parental rights in order to facilitate D.E.M.'s adoption by Petitioners. Under these circumstances, the court did not err in deeming it likely that Petitioners will adopt D.E.M. Nor did the court abuse its discretion in concluding that D.E.M.'s best interests would be served by terminating Mother's parental rights under N.C. Gen. Stat. § 7B-1110(a). Accordingly, we affirm the termination order.
 

 AFFIRMED.
 

 Judge ARROWOOD concurs.
 

 Judge STROUD dissents by separate opinion.
 

 Our mandate to the trial court in
 
 In re D.E.M.
 
 issued 21 March 2016.
 
 See
 
 N.C. R. App. P. 32(b).
 

 STROUD, Judge, dissenting.
 

 I respectfully dissent from the majority's opinion for two reasons. First, during the six
 month time period relevant to termination based upon willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7) (2015), Mother had no parental rights and no visitation rights under the previous Chapter 50 custody order. Second, the trial court erred by terminating Mother's parental rights based upon non-payment of child support under N.C. Gen. Stat. § 7B-1111(a)(4) (2015) because there was never any child support order entered requiring Mother to pay child support to Petitioners.
 

 I. Abandonment
 

 This case presents an unusual situation and appears to be a case of first impression. As the majority states, under N.C. Gen. Stat. § 7B-1111(a)(7), the trial court may terminate parental rights where "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" In this case, this Court filed a previous opinion on 1 March 2016 that vacated an earlier termination order due to lack of standing.
 
 In re D.E.M.
 
 , --- N.C. App. ----,
 
 782 S.E.2d 926
 
 ,
 
 2016 WL 791272
 
 , 2016 N.C. App. LEXIS 229 (2016) (unpublished). The new petition to terminate Mother's and Father's parental rights in the present case was then filed on 8 March 2016. Thus, during the entire six months next preceding the filing of the petition for termination, Mother's parental rights had been terminated and she had no right to visit with the child. The filing of the new petition, even before the prior termination order was officially vacated, set the beginning and ending dates of the new six-month period preceding the date of filing and also ended any practical possibility that Mother may take some legal action in the gap between the first termination order and the filing of a new petition to assert her visitation rights, because there was no gap. This was a clever procedural maneuver by Petitioners' counsel, at a time when Mother had no legal representation. After the new petition was filed and counsel was appointed for her, it was too late.
 

 Although Mother had been awarded some limited visitation rights in the prior Chapter 50 custody proceeding, the prior termination order
 ended those rights. At the hearing in September 2016, Mother described her attempts to exercise her visitation before her rights were terminated and claimed that Petitioners always had some sort of excuse for her not to visit. For example, they did not want her to bring her other child to her visitation with D.E.M., although the custody order did not include this limitation and her other child is D.E.M.'s half-brother. Petitioner Grandmother acknowledged that she had imposed this limitation although the order did not require it. Mother testified that since May of 2015, she had been unable to contact respondents. She never had a home phone number for Petitioners. Petitioner Grandmother acknowledged that she had changed her cell phone number about a year before the hearing, although she said that Petitioner Grandfather's number had not changed. But Mother testified that when she called Petitioner Grandfather's number in November 2015, a woman answered and told her it was not the correct number. She had been blocked from contacting Petitioner Grandmother on Facebook. Petitioners did not claim to have made any efforts to encourage Mother to have a relationship with D.E.M. or even to let her know how the child was doing. Mother felt that she was not welcome at Petitioners' home, and since they lived down a mile-long dirt road, she feared they would charge her with harassment if she tried to approach the house. She also testified: "I've been threatened that I wasn't welcome up there. They have guns."
 

 On cross-examination, Petitioners' counsel stressed the fact that Mother had visitation rights under the custody order and that she had not filed an action for contempt to enforce those rights. Mother acknowledged this was true, as she had been unable to afford to pay an attorney. In closing, Petitioners' counsel stressed that Mother had not sought to see the child and acknowledged that during the relevant six months, her rights had been terminated. But he argued that the prior termination order should not change the court's analysis:
 

 The Court of Appeals vacated the earlier decision. What does all that mean for [Mother]? That's more time. It's more time for her to try to come back to court and
 try to say I've got a custody order. I've got an order that says I get to see my son on certain specified dates. And I want to do that....
 

 And the most telling thing in this case is she didn't do anything.
 

 The trial court also noted that Mother had visitation rights under the custody order. But Petitioners' argument and the trial court's reliance
 on the custody order for the relevant six month period was legally incorrect. Mother did not have a custody order or any visitation rights after 4 March 2015, when her parental rights were terminated by the trial court's first order, and since the new termination proceeding was filed on 8 March 2016 before the mandate issued on this Court's opinion in
 
 In re D.E.M.
 
 , --- N.C. App. ----,
 
 782 S.E.2d 926
 
 ,
 
 2016 WL 791272
 
 , 2016 N.C. App. LEXIS 229, she never could have had any opportunity legally to assert her rights during the relevant time, even if she had been able to afford an attorney.
 

 I agree with the majority that it is appropriate for the trial court to consider a parent's conduct outside the relevant six months next preceding the filing of the petition "in evaluating respondent's credibility and intentions."
 
 In re C.J.H.
 
 ,
 
 240 N.C. App. 489
 
 , 503,
 
 772 S.E.2d 82
 
 , 91 (2015). But in
 
 In re C.J.H.
 
 , the father was under no legal or physical restraint or disability which could prevent him from seeing the child; the court was evaluating his "sporadic" efforts to have contact with the child over a period of several years, where he had made a few attempts during the relevant six month period.
 
 Id
 
 . at 500-03,
 
 772 S.E.2d at 90-91
 
 . The law does not support relying
 
 solely
 
 upon a time period prior to the six months preceding the filing of the petition for a finding of abandonment. Efforts to see a child outside of the relevant six-month period were considered only to evaluate the "credibility and intentions" of the parent
 
 during
 
 the six month period. Events outside the relevant six month period cannot be the sole basis for the termination, where the parent was legally not a parent and had no rights to assert during the relevant time. I would therefore reverse the trial court's determination that Mother willfully abandoned the child under N.C. Gen. Stat. § 7B-1111(a)(7).
 

 II. Failure to pay child support
 

 The other ground the trial court relied upon to terminate Mother's right was failure to pay any child support under N.C. Gen. Stat. § 7B-1111(a)(4). Although a child support order is not necessary for the trial court to terminate a parent's rights under N.C. Gen. Stat. § 7B-1111(a)(3) (2015), when a child "has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home," a child support order is necessary in this situation, where the child was in the legal custody of Petitioners, his grandparents. The trial court relied here upon N.C. Gen. Stat. § 7B-1111(a)(4), which allows termination of parental rights when:
 

 One parent
 
 has been awarded custody of the juvenile by judicial decree or has custody by agreement of the
 parents, and the
 
 other parent
 
 whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition or motion willfully failed without justification to pay for the care, support, and education of the juvenile, as required by said decree or custody agreement.
 

 (Emphasis added)
 

 First, it is not clear that subsection (4) would apply here since neither parent was awarded custody of the child; the grandparents were awarded custody. But even if this subsection does apply to a case in which a non-parent has custody, it is undisputed that no child support order was ever entered. Petitioners testified that they had included a claim for child support in the custody complaint but acknowledged that no order was ever entered on child support.
 
 [4]
 
 The trial court erred in terminating Mother's parental rights on this basis.
 

 These were the only two bases for termination of parental rights the trial court found, and considering the evidence before the court, that is not surprising. The other unusual thing about this case is that the record does not reveal that Mother-or Father, although he did not appeal-is unfit as a parent in any way. Mother and Father, though never married, had been living together since January 2015 and continued to do so at the time of the hearing in September 2016. Mother's child from a prior relationship and their youngest child, D.E.M.'s full brother, live with them. She testified regarding the medical care she provided for both children and her older child's education. Although Mother had some periods of instability in relation to her residence several years ago, at the time of the termination hearing, she and Father shared a home and there was no evidence to indicate it is not suitable for children. Both parents were employed. Mother had a driver's license, insurance, and transportation. The only evidence of domestic violence between the parents was the incident in May 2013 which led to Petitioners' assumption of custody of D.E.M. Mother testified that they now "get along better than we've ever gotten along." Petitioner Grandmother had suspicions of drug use by Mother and Father back in 2013; Mother had submitted to three drug tests under an order in the custody case and passed all three. There was no evidence of any suspicion of drug use since 2013. All of this evidence was uncontroverted.
 

 I agree that there were other methods Mother could have, and should have, used to enforce her rights to D.E.M. since 2014. Those methods all require representation by counsel, which Mother could not afford. She could have used other methods to contact Petitioners to seek to exercise her visitation-when the custody order was still in effect, at least. The trial court evaluated her "excuses" as unpersuasive, and that is the role of the trial court. But because Mother had no legal rights during the relevant six-month period, as a matter of law, her rights cannot be terminated based upon her failure to assert them during that time.
 

 Since I would therefore reverse the trial court's order adjudicating the existence of grounds to terminate Mother's parental rights, I dissent.
 

 If Petitioners had pursued entry of an order for child support in the Chapter 50 case, it would have imposed an obligation on Father-their son-as well as Mother. The evidence showed that Petitioners also allowed Father to see D.E.M., although he did so infrequently.