ARROWOOD, Judge.
Respondent ("Father") appeals from the trial court's amended orders terminating his parental rights as to the juveniles "Kevin" and "Hayes"[1] ("the children"). Because we conclude the trial court did not err in adjudicating grounds to terminate Father's parental rights for willfully abandoning the children under N.C. Gen. Stat. § 7B-1111(a)(7) (2015), and gave due consideration to the dispositional factors in N.C. Gen. Stat. § 7B-1110(a) (2015), we affirm.
I. Background
Kevin and Hayes were born in 2007 and 2010, respectively, and have lived exclusively with their mother ("Mother") since June 2013. On 25 July 2016, Mother filed petitions seeking the termination of Father's parental rights on grounds of willful abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). Inter alia, her petitions alleged the following: the children were born of the parties' marriage which ended in divorce in 2014; Father's last contact with the children occurred in late 2013; Father had provided no financial support to Mother or the children since June 2013; Father was presently incarcerated for crimes committed against Mother in April 2015, including second-degree kidnapping and assault on a female; and Father's "earliest release date" for these offenses was 9 July 2017. Father did not file an answer to Mother's petitions. See N.C. Gen. Stat. § 7B-1107 (2015).
At a hearing on 3 March 2017, Mother adduced evidence that Kevin and Hayes were placed in her care in June 2013 "after acts of domestic violence which occurred in the home where [she and Father] were previously living[.]" Watauga County Department of Social Services ("DSS") became involved with the family and developed a case plan for Father. In October 2013, a consent order signed by the parties was entered in civil court. The consent order provided that Father would have no contact with the children until he completed his DSS case plan. Inter alia, Father was required to "continue with his DSS appointed therapist" and "comply with the terms and conditions recommended by DSS[.]" DSS closed its case once the children were placed with Mother pursuant to the consent order. Mother continued to reside in Watauga County as a participant in the State's address confidentiality program. See N.C. Gen. Stat. § 15C-3 (2015).
Mother testified that Kevin and Hayes have lived exclusively with her since June 2013 and that she has "provided for all their support and care financially [ ]" since that date. Furthermore, Father had made no inquiries about the children, sent no "cards or gifts or anything of that nature" to them, and did not attempt to contact them or provide any financial support in the six months that preceded her filing of the petitions. Nor had any member of Father's family attempted to contact or provide for the children. Father had never returned to court seeking to change the parties' custody arrangement or to "acquire custody [or] visitation" with the children.
Father testified that he was detained in Watauga County Jail from April 2015 to April 2016 and had no ability to earn money during that period. When he was released from jail, he believed he was forbidden to contact Mother or the children by virtue of a "no-contact order."[2] Since June 2016, Father had been incarcerated in state prison where he earned $1.25 per day as a cook.
Father acknowledged signing a consent order that was filed on 15 October 2013 and contained the following provision:
[Father] shall continue his course of treatment with Ray Powers and shall follow the recommendations of the DSS case plan that are currently in place and that may hereafter be amended from time to time. Contact between [Father] and the minor children shall continue to be subject to the terms and conditions recommended by DSS.
Father explained that he ceased his treatment due to Mr. Powers "lack of professionalism and his bullying tactics[.]" He could not recall any of Mr. Powers' recommendations. Father claimed to have obtained a "separate analysis" from another therapist but could not remember his name or his recommendations.
Asked directly about his efforts to comply with the requirements of the 2013 consent order or to provide for Kevin and Hayes, Father testified as follows:
Q. ... You've not done anything under the terms of that order to comply with DSS's recommendations in order for you to find a way back to visitations with your children?
A. No, I didn't.
Q. And during that time, did you provide ... for your children financially?
A. No, I did not.
A DSS supervisor confirmed the agency had received no information that Father had satisfied any of the requirements of his case plan during the six-month period from January 2016 to July 2016.
The trial court entered orders terminating Father's parental rights on 13 March 2017 and filed amended orders the following day. The court concluded that Father had willfully abandoned Kevin and Hayes under N.C. Gen. Stat. § 7B-1111(a)(7) and that termination of his rights was in the children's best interests. Father filed timely notice of appeal. Although the original and amended orders are included in the record on appeal, we construe the amended orders as replacing the originals for purposes of our review.
II. Discussion
On appeal, Father asserts challenges to both the adjudication and disposition portions of the trial court's orders.
A. Adjudication
Father claims the evidence and the trial court's findings of fact do not support its conclusion that grounds exist to terminate his parental rights for willfully abandoning Kevin and Hayes under N.C. Gen. Stat. § 7B-1111(a)(7). We review an adjudication under N.C. Gen. Stat. § 7B-1111(a) to determine (1) whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and (2) whether the findings support the court's conclusions of law. In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, disc. review denied sub nom., In re D.S., 358 N.C. 543, 599 S.E.2d 42 (2004). Findings not specifically contested by Father are treated as binding on appeal. In re H.S.F., 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007). Furthermore, "erroneous findings unnecessary to the determination do not constitute reversible error" where the trial court's remaining findings independently support its conclusions of law. In re T.M., 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006). We review conclusions of law de novo. Carolina Power & Light Co. v. City of Asheville, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004).
The trial court entered a separate order addressing Father's rights with regard to each child. Because the orders' findings and conclusions are essentially identical, we review them together. The court made the following findings in support of its adjudication under N.C. Gen. Stat. § 7B-1111(a)(7) :
7. That the juvenile[s] reside[ ] with [Mother] at an undisclosed location in, [sic] Watauga County, North Carolina....
....
12. That for at least the six month period prior to the filing of the Petition[s], [Mother] has been the sole care giver for the juvenile[s]; and that [Father] has made no effort to contact nor inquire into the health safety and welfare of the juvenile[s].
13. That [DSS] established a case plan for [Mother and Father] on June 21, 2013 as a result of a report of acts of domestic violence taking place in the presence of the juvenile[s]. That as a result of requirements of that case plan not being complied with by [Father], the Department ceased all visitation with the juvenile[s] by [Father] until such time as [he] complied with the terms of the case plan. The Department closed their case on the 17th day of January, 2014.
14. That there was a Consent Order on Child Custody entered into by the parties in Watauga County File No. 13-CVD-322 and filed with the Court on the 15th day of October, 2013. That pursuant to the terms of Paragraph 3a of that Order, the "[Father] shall continue his course of treatment with Ray Powers and shall follow the recommendations of the DSS case plan that are currently in place and that may hereafter be amended from time to time"....
15. That by the testimony of [Father], he attended only one session with Ray Powers, stated that he had met with someone else who[se] name [Father] could not remember, but did nothing else to comply with the DSS recommendation as required under the terms of the Order of October 15th, 2013 in order to work towards any reunification with the juvenile[s].
16. That on the date of this hearing, [Father], through his counsel, provided a cashiers check in the amount of Forty Dollars ($40.00) to the counsel for [Mother] as payment of support for the juvenile[s].
17. That the Court finds that [Father] has had the means and ability to pay something towards the financial support of his minor child[ren], but until the payment on this date, has willfully failed to do so.
18. That [Father] has willfully abandoned the juvenile[s] for a period of more than six months next preceding the filing of th[ese] Petition[s] pursuant to [N.C. Gen. Stat.] § 7B-1111 [ (a) ](7). Since at least the six months next preceding the filing of the Petition[s], [Father] has not seen the juvenile[s]; has made no inquiries regarding the juvenile[s]; and has made no effort to maintain a relationship with the juvenile[s].
(Emphasis omitted). The court separately concluded that Father willfully abandoned the juveniles pursuant to N.C. Gen. Stat. § 7B-1111(a)(7).
1. Findings of Fact
Father challenges the evidentiary support for Findings 12, 15, and 18[3] insofar as they suggest he had the ability during the relevant six-month period "to contact [ ]or inquire about the health safety and welfare of the juvenile[s,]" to comply with the terms of his DSS case plan as referenced by the 2013 consent order, or to "maintain a relationship with" his children. Father points to the evidence that he was incarcerated for most of the period between January and July of 2016 and was subject to Mother's "address confidentiality agreement" which shielded her address from him. Father further notes that, because he had yet to satisfy the conditions of the parties' 2013 consent order, he "remained under legal directive not to have contact with the children" at the time of the six-month period relevant to N.C. Gen. Stat. § 7B-1111(a)(7).
The determination that Father made "no effort" to contact or inquire about the children, as stated in Finding 12, is supported by the hearing evidence, including Father's own testimony. Finding 15 is likewise supported by Father's testimony that he had done nothing to comply with his DSS case plan since discontinuing his treatment with Mr. Powers. The portion of Finding 18 stating that Father did not see or inquire about the children or make any "effort to maintain a relationship with" them between 25 January and 25 July 2016 also reflects the hearing testimony. While these findings do not address what was possible for Father to achieve during this period, we do not find them to be inaccurate. The statement in Finding 18 that Father "has willfully abandoned the juvenile[s] ... pursuant to [N.C. Gen. Stat.] § 7B-1111 [ (a) ] (7)" is more properly classified as a conclusion of law and will be reviewed infra. See In re S.Z.H., --- N.C. App. ----, ----, 785 S.E.2d 341, 347 (2016) (characterizing adjudication of abandonment under (a)(7) as a conclusion of law).
Father also challenges Finding 17, i.e., that he "had the means and ability to pay something towards the financial support of his minor child[ren], but ... willfully failed to do so." He contends he had no way to contact Mother in order to pay support. Moreover, the court heard "no evidence ... that he could have made arrangements with a third party to get support monies to [Mother]." The fact that his counsel delivered a $40.00 child support payment to Mother's counsel at the termination hearing, as stated in Finding 16, "does not show that [Father] had the ability to pay during the relevant six-month period" or "knew how to transmit money directly to [Mother]" at that time.
We find no clear and convincing evidence that Father had the ability to contribute financial support for Kevin and Hayes during the six months between 25 January and 25 July 2016. Father's undisputed testimony shows he was in jail from April 2015 to April 2016 with no ability to earn money. Although the record is silent regarding his whereabouts in May 2016, Father was imprisoned at some point in June 2016, and thereafter began to earn $1.25 per day. The court heard no evidence regarding when Father actually began to receive his prison income or how he could have transferred any or all of his wages to Mother or the children prior to 25 July 2016. Accordingly, we strike Finding 17 for purposes of our review.
2. Conclusion of Law
Father next claims that the evidence and the trial court's findings of fact do not support the conclusion that he abandoned Kevin and Hayes under N.C. Gen. Stat. § 7B-1111(a)(7). This provision authorizes the termination of parental rights if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition[.]" N.C. Gen. Stat. § 7B-1111(a)(7). As previously noted, the "determinative period" in this case is the six months from 25 January 2016 to 25 July 2016.[4] In re S.R.G., 195 N.C. App. 79, 84, 671 S.E.2d 47, 51 (2009).
"Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." In re Searle, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986). "It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962).
A judicial determination that a parent willfully abandoned her child, particularly when we are considering a relatively short six month period, needs to show more than a failure of the parent to live up to her obligations as a parent in an appropriate fashion; the findings must clearly show that the parent's actions are wholly inconsistent with a desire to maintain custody of the child.
In re S.Z.H., --- N.C. App. at ----, 785 S.E.2d at 347 (quoting In re S.R.G., 195 N.C. App. at 87, 671 S.E.2d at 53 ).
" 'Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence.' " Id.(quoting In re S.R.G., 195 N.C. App. at 84, 671 S.E.2d at 51 ). "Although the trial court must examine the relevant six-month period in determining whether respondent abandoned the juvenile, the trial court may consider respondent's conduct outside this window in evaluating respondent's credibility and intentions." In re C.J.H., 240 N.C. App. 489, 503, 772 S.E.2d 82, 91 (2015).
It is true, as Father contends, that the trial court's findings do not describe the hindrances he faced due to his incarceration and other factors, including the confidentiality of Mother's address. However, because the court's findings show a complete lack of effort by Father to have any involvement with his sons, we hold they are sufficient to support its conclusion that he abandoned the children within the meaning of N.C. Gen. Stat. § 7B-1111(a)(7).
"Incarceration, standing alone, neither precludes nor requires a finding of willfulness on the issue of abandonment, and despite incarceration, a parent failing to have any contact can be found to have willfully abandoned the child." In re D.M.O., --- N.C. App. ----, ----, 794 S.E.2d 858, 862 (2016) (citations, internal quotation marks, and brackets omitted). Though "this Court has repeatedly acknowledged that the opportunities of an incarcerated parent to show affection for and associate with a child are limited[,]" id. at ----, 794 S.E.2d at 862-63, we have also held that an incarcerated parent "will not be excused from showing interest in the child's welfare by whatever means available." Whittington v. Hendren, 156 N.C. App. 364, 368, 576 S.E.2d 372, 376 (2003) ; see also In re Graham, 63 N.C. App. 146, 151, 303 S.E.2d 624, 627 (finding the father's incarceration did not excuse "his all but total failure to communicate with or even inquire about his children"), disc. review denied, 309 N.C. 320, 307 S.E.2d 170 (1983).
In each of the cases cited by Father, the respondent parent evinced some affirmative efforts to preserve a relationship with the child. In In re Maynor, 38 N.C. App. 724, 248 S.E.2d 875 (1978), the respondent testified "that he had tried to contact his son and had written to the Social Services Department in Cumberland County to help locate his son but had received no answer[,] and that he was unable to earn any money as a result of his incarceration." Id. at 725, 248 S.E.2d at 876. The respondent's father also attested to the respondent's "efforts to locate his son." Id. Reversing a judgment in favor of the petitioners, the Court concluded that "the fact that the respondent was unable to locate his son and was unable to make support payments as a result of his incarceration, is inconsistent with a willful intent to abandon his son." Id. at 726-27, 248 S.E.2d at 877.
In In re T.C.B., 166 N.C. App. 482, 602 S.E.2d 17 (2004), the father was charged with a sexual offense against the child in 1999. Id. at 486, 602 S.E.2d at 20. On the advice of defense counsel, he ceased all contact with the child and her mother. The mother, whose DSS protection plan also forbade the father from visiting the child, petitioned to terminate his parental rights in 2002. Id. at 483, 487, 602 S.E.2d at 18, 20. However, the father had paid monthly child support beginning in 2001 and continuing into 2003. Id. at 488, 602 S.E.2d at 20-21. He also refused to relinquish his parental rights in exchange for a dismissal of the criminal charge.[5] Under these circumstances, the Court held that the trial court erred in concluding the father had willfully abandoned the child. Id. at 487-88, 602 S.E.2d at 20-21.
Finally, in In re D.M.O., the Court vacated an order terminating the parental rights and remanded for further fact-finding on the issue of willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7). In re D.M.O., --- N.C. App. at ----, 794 S.E.2d at 866. The trial court found the respondent-mother sent text messages to the petitioner-father about the child during the relevant six-month period. Id. at __, 794 S.E.2d at 862. The respondent-mother testified that she also "sent letters" to the child and attempted to phone him during this period. Id. Although she "struggled with drug addiction and substance abuse and [was] incarcerated multiple times at multiple jails and prisons[,]" the evidence showed her history of involvement-albeit sporadic-with the child. Id. at ----, ----, 794 S.E.2d at 860, 862. We noted that "[t]he trial court made no findings establishing whether respondent-mother had made any effort, had the capacity, or had the ability to acquire the capacity, to perform the conduct underlying its conclusion that [she] abandoned [the child] willfully." Id. at ----, 794 S.E.2d at 864 (emphasis added). More particularly, the case was remanded for additional findings regarding
whether and to what extent respondent-mother called, texted, and mailed letters during the relevant period; whether and to what extent respondent-mother was able to participate in exercising parental duties on account of her periodic incarceration at multiple jails; and whether and to what extent petitioner-father hindered respondent-mother from communicating with [the child] or exercising visitation; among other evidentiary findings relevant to determining the ultimate finding of willfulness in the context of abandonment.
Id. at ----, 794 S.E.2d at 866.
In the case sub judice, the trial court found that Father "made no effort to contact nor inquire into the health safety and welfare of the juvenile[s]"; "did nothing [after discontinuing therapy with Mr. Powers] to comply with ... the terms of the [consent] Order of October 15th, 2013 in order to work towards any reunification with the juvenile[s]"; and "made no effort to maintain a relationship with the juvenile[s]." Unlike In re D.M.O., there are no unresolved conflicts in the evidence with regard to Father's conduct during the relevant period. Id. at ----, 794 S.E.2d at 866.
Our case law reflects the principle that a parent's failure to make any effort toward a child may support an adjudication of abandonment under N.C. Gen. Stat. § 7B-1111(a)(7), notwithstanding the obstacles faced by the parent due to incarceration or similar circumstances. See In re B.S.O., 234 N.C. App. 706, 711, 760 S.E.2d 59, 64 (2014) (detention and deportation to Mexico); In re D.J.D., 171 N.C. App. 230, 241, 615 S.E.2d 26, 33-34 (2005) (incarceration). In In re McLemore, 139 N.C. App. 426, 533 S.E.2d 508 (2000), for example, we recognized the difficulties experienced by the respondent-father, including "that respondent suffered from alcoholism, was incarcerated for some time, and had trouble maintaining steady employment" during the relevant six-month period. Id. at 430, 533 S.E.2d at 510. "Nonetheless, [we concluded] without any indication of efforts by respondent to fulfill his parental duties, financially or emotionally, ... the court's findings in this case simply do not provide an explanation inconsistent with willfulness...." Id. at 431, 533 S.E.2d at 510 (emphasis added).
More recently, in In re D.E.M., --- N.C. App. ----, 802 S.E.2d 766 (2017),[6] this Court affirmed an adjudication of willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7) where the respondent-mother was subject to an order terminating her parental rights-an order later reversed on appeal-during the relevant six-month period. "Although Mother's options were limited after she was divested of her parental rights," we observed, "she was not absolved of the requirement that she take whatever measures possible to show an interest in D.E.M." Id. at ----, 802 S.E.2d at 771. "Mother's failure to even attempt to show affection for her child through her limited options was evidence that the child had been abandoned." Id.(citing Hendren, 156 N.C. App. at 369, 576 S.E.2d at 376-77 ). On the question of willfulness, the Court emphasized that the trial court was permitted to interpret the respondent-mother's conduct during the determinative six months in light of her years of noninvolvement with the child:
The trial court's findings show that Mother unilaterally ceased her court-ordered visitation with D.E.M. in December of 2013 and made no further effort to preserve her relationship with D.E.M. Viewed against this history, the evidence of Mother's ongoing failure to visit, contact, or provide for D.E.M. from 8 September 2015 to 8 March 2016 allows a reasonable inference that she acted willfully.
Id. at ----, 802 S.E.2d at 772 (citations omitted).
In the case sub judice, Father was incarcerated for almost five of the six months immediately preceding Mother's filing of the petitions on 25 July 2016. He was also subject to a consent order entered in a civil custody proceeding, which made his visitation with Kevin and Hayes contingent upon his compliance with his DSS case plan.[7] Finally, an "address confidentiality agreement" prevented Father from knowing Mother's home address. While Mother suggested "there would probably be ways of" allowing Father to send gifts or other items to the children, she did not identify an actual means for Father to do so. But cf. N.C. Gen. Stat. § 15C-3 (requiring the Attorney General to "designate a substitute address for a program participant and act as the agent of the program participant for purposes of service of process and receiving and forwarding ... mail"). To be sure, Father's options to demonstrate parental concern and affection for his children under these circumstances were limited. As shown by the trial court's findings, however, Father made no effort of any kind to inquire about or provide for his children, to express concern for them, or to otherwise manifest his parental status.
Father did not attempt to contact DSS, as did the father in Maynor. Nor did he contact the court in an attempt to modify the 2013 custody order. Cf. In re Cardo, 41 N.C. App. 503, 509, 255 S.E.2d 440, 444 (1979) (noting the respondent's failure to contact the court to obtain the address of the children's mother). As in In re D.E.M., Father's inaction during the determinative six-month period was a continuation of years of prior inaction by Father toward the children. See In re D.E.M., --- N.C. App. at ----, 802 S.E.2d at 772. By his own admission, he had done nothing to comply with his DSS case plan and "find a way back to visitations with [his] children" after discontinuing the treatment required by the consent order. Cf. generally In re S.R.G., 195 N.C. App. at 87, 671 S.E.2d at 53 ("A parent's failure to address the necessary requirements laid out in her case plan to regain custody of her child becomes more relevant to any finding of willful abandonment the longer the parent fails to act."). Therefore, we cannot say the trial court's finding of willfulness or its adjudication of abandonment under N.C. Gen. Stat. § 7B-1111(a)(7) was unsupported by the evidence or by the court's evidentiary findings.
B. Disposition
Father claims the trial court erred by entering a disposition in this cause without hearing evidence on each of the dispositional factors listed in N.C. Gen. Stat. § 7B-1110(a). There is no merit to the contention.
"Once a trial court has concluded during the adjudication phase that grounds exist for termination of parental rights, it must decide in the disposition phase whether termination is in the best interests of the child." In re D.R.F., 204 N.C. App. 138, 141, 693 S.E.2d 235, 238, disc. review denied, 364 N.C. 616, 705 S.E.2d 359 (2010). Under N.C. Gen. Stat. § 7B-1110(a),
[t]he court may consider any evidence, including hearsay evidence as defined in [N.C. Gen. Stat. §] 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) ; see also In re D.R.F., 204 N.C. App. at 141-42, 693 S.E.2d at 238-39. "[T]he language of this statute requires the trial court to 'consider' all six of the listed factors, and ... any failure to do so would constitute an abuse of discretion." In re D.H., 232 N.C. App. 217, 220-21, 753 S.E.2d 732, 735 (2014). However, written findings are required only "if there is 'conflicting evidence concerning' the factor, such that it is 'placed in issue by virtue of the evidence presented before the trial court [.]' " In re H.D., 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015) (quoting In re D.H., 232 N.C. App. at 222 n.3, 753 S.E.2d at 735 n.3 ).
Father contends the trial court "heard no evidence about the children's bond with [him] ... [or] why termination would be in the children's interest." While we disagree with Father's characterization of the evidence, we further find no support for the premise that a trial court may not enter a disposition unless the parties adduce evidence on every factor in N.C. Gen. Stat. § 7B-1110(a). Cf. In re D.H., 232 N.C. App. at 221-22, 753 S.E.2d at 735 (affirming disposition under N.C. Gen. Stat. § 7B-1110(a) despite the absence of "any evidence in the record demonstrating that [the child's] age was placed in issue as a relevant factor, such that it had an impact on the trial court's decision"). As this Court has explained, "there is no burden of proof at disposition. The court solely considers the best interests of the child." In re Dexter, 147 N.C. App. 110, 114, 553 S.E.2d 922, 924 (2001).
Contrary to Father's claim, the trial court heard testimony that he has had no contact with Kevin or Hayes since 2013. Such evidence qualifies as evidence about the children's bond with Father. The court also heard testimony about how the children are faring in their Mother's care, her capacity to meet their needs, Father's lack of involvement with the children, and his non-compliance with the conditions for involvement included in the parties' consent order. All of this evidence is probative on the issue of "whether terminating [Father's] rights is in the juvenile[s'] best interest." N.C. Gen. Stat. § 7B-1110(a).
Although neither party presented additional evidence at the dispositional phase of the hearing, the trial court gave them the opportunity to do so. See In re Mitchell M., 148 N.C. App. 483, 492, 559 S.E.2d 237, 243 (Hunter, J., dissenting in part), rev'd for reasons in dissenting opinion sub nom., In re Mitchell, 356 N.C. 288, 570 S.E.2d 212 (2002) (per curiam). Moreover, the court explicitly addressed each of the factors in N.C. Gen. Stat. § 7B-1110(a) :
THE COURT: The Court is considering under 7B 11-10 [sic] the statutory factors. I do consider the ages of the juveniles. I'll note the-based on the testimony from more than three years proceeding [sic] this hearing, they've been in petitioner's sole custody, care, and control. That they have been through what the Court finds credible to be a very difficult time with intensive therapy and otherwise based on the situation as presented that now they are doing well.
As far as the likelihood of adoption, I can't find that it's more likely than not that adoption would occur or not occur. There's not a permanent plan in the matter. There was a previous consent order.
As to any bond between the juvenile and the parent, there's been no quality of bond evidence presented that they have any bonding other than what's been dealt with in therapy.
And as it's not a case of a proposed adoptive parent, guardian, custodian or other permanent placement, I'll find that the placement is with the petitioner, and that they have a high quality bond.
As far as the relevant considerations, the Court's considered the evidence on the abandonment, and based on the totality, the Court concludes that it's in the best interests of the juveniles that the parental rights of the respondent be terminated.
See N.C. Gen. Stat. § 7B-1110(a). The court's written findings reflect its consideration of the statutory factors, including "that [Father] has maintained no relationship with the juvenile[s]; and that it is in the best interests of the juvenile[s] to terminate the parental rights of [Father]."
The decision to terminate parental rights is reviewed only for abuse of discretion. In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "A ruling committed to a trial court's discretion ... will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." In re S.C.R., 198 N.C. App. 525, 536, 679 S.E.2d 905, 911-12 (citation and internal quotation marks omitted) (emphasis in original), appeal dismissed, 363 N.C. 654, 686 S.E.2d 676 (2009). As Father shows no abuse of discretion here, we affirm the trial court's orders.
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and BERGER concur.

The parties use these pseudonyms to refer to the juveniles. N.C. R. App. P. 3.1(b).

The trial court rejected Father's characterization of the 2013 consent order as a "no-contact order," inasmuch as it provided Father a reasonable "path for contact" with the children by complying with his DSS case plan.

Father cites additional findings which he asserts are unsupported by the evidence but "do not appear relevant" to the adjudication under N.C. Gen. Stat. § 7B-1111(a)(7). Because Father does not present these findings as prejudicial error, we do not address them. See In re T.M., 180 N.C. App. at 547, 638 S.E.2d at 240.

We reject Father's argument that the trial court mistakenly applied a "one year rule" in considering the evidence related to abandonment. The transcript reflects the court limited its consideration of evidence to Father's conduct during the six months immediately preceding Mother's filing of the petition on 25 July 2016. The court referred to "the year before the filing of the petition" in considering whether Mother was able to establish grounds to terminate Father's parental rights for non-payment of child support under N.C. Gen. Stat. § 7B-1111(a)(4) (2015). The court ultimately ruled that Mother failed to prove this alternative ground for termination, absent evidence that Father was obligated to pay child support by a judicial decree or custody agreement.

The State ultimately dropped the criminal charge prior to the termination hearing. In re T.C.B., 166 N.C. App. at 486-87, 602 S.E.2d at 20.

The respondent-mother's appeal from our decision in In re D.E.M. is currently pending in the North Carolina Supreme Court.

Although Finding 13 states that the consent order ceased Father's "visitation" with the children until he completed his DSS case plan, the DSS supervisor testified that the consent order forbade any "contact pending his completion of the plan[.]" (Emphasis added).