IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-552

No. COA21-576

Filed 16 August 2022

Wake County, Nos. 19 JA 47-48[1]

IN THE MATTER OF: A.C. & A.C.

Appeal by Respondent-Father from order entered 15 June 2021 by Judge Lori Christian in Wake County District Court. Heard in the Court of Appeals 5 April 2022.

*Mary Boyce Wells for petitioner-appellee Wake County Health and Human Services.*

*Anné C. Wright for respondent-appellant father.*

*Stam Law Firm, PLLC, by R. Daniel Gibson, for guardian ad litem.*

MURPHY, Judge.

¶ 1    An adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. Where evidence at trial demonstrated that Respondent-Father, Isaac,[2] had the ability to pay some amount of the cost of the care for his children while in foster care but paid nothing during the six-month period immediately preceding the filing of the petition, the trial

---

[1] We note that the trial court case numbers are occasionally referenced as 19 JT 47-48 within the Record. For purposes of this opinion, the case numbers 19 JA 47-48 are interchangeable with 19 JT 47-48.

[2] Pseudonyms are used for all relevant persons throughout this opinion to protect the identities of the juveniles and for ease of reading.

court had adequate grounds to terminate parental rights even though Isaac was incarcerated for a portion of that time period and the amount of income disclosed was unspecified.

## BACKGROUND

On 18 March 2019, Wake County Health and Human Services[3] ("WCHHS") filed petitions alleging that Debby and Florence were neglected juveniles. Debby and Florence had been living with family members since at least 2018 due to their parents' substance abuse issues. WCHHS attempted to work with the family as early as September 2018. However, Isaac "refused to comply with recommended substance abuse treatment" and "random drug screens." Nonsecure custody was granted to WCHHS on 29 March 2019. In an order entered 22 May 2019, the children were adjudicated to be "neglected as defined by N.C.G.S. §[ ]7B-101(15) in that the children do not receive proper care and supervision from the parents and live in an environment injurious to their welfare."

As part of the adjudication order, Isaac was required to "enter into and comply with the Out of Home Family Services Agreement." The Out of Home Family Services Agreement required Isaac to:

> a. [Follow a] [v]isitation agreement.

---

[3] Wake County Human Services became Wake County Health and Human Services effective 1 July 2021.

b. Obtain and maintain housing appropriate for himself
and his children.

c. Obtain and maintain legal income sufficient to meet the
needs of himself and his children.

d. Refrain from use of illegal or impairing substances and
submit to random drug screens.

e. Refrain from all criminal activity and comply with
current criminal court requirements.

f. Complete a psychological evaluation and comply with
recommendations.

g. Complete a parenting education program approved by
[WCHHS] and demonstrate skills learned.

h. Maintain regular contact with the social worker at
[WCHHS], notifying [WCHHS] of any change in situation
or circumstances within five business days[.]

¶ 4    After entering the Out of Home Family Services Agreement, Isaac consistently failed to meet his obligations. After the first permanency planning hearing, held 20 August 2019, the trial court found that Isaac had "failed to engage in services," "refused to comply with multiple requested drug screens," inconsistently contacted WCHHS and visited with his children, and had "pending criminal charges." After a second permanency planning hearing, held 10 February 2020, the trial court once again found Isaac "failed to significantly comply with his case plan." Finally, after a third permanency planning hearing, held 3 August 2020, the trial court found yet again that Isaac "failed to significantly comply with his case plan." Moreover, later

in August 2020, Isaac tested positive for morphine. Isaac was incarcerated in July 2020 and again from 1 September 2020 until 4 December 2020 for probation violations.

WCHHS filed a motion to terminate parental rights on 15 October 2020. A hearing on the motion was held on 3 February 2021 and 1 March 2021. The trial court terminated both parents' parental rights, concluding (I) "[Isaac] willfully left the children in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the [trial] [c]ourt that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the children"; (II) "[Isaac] neglected the children within the meaning of [N.C.G.S. § 7B-101]"; and (III)

> [t]he children have been placed in the custody of [WCHHS] and [Isaac has] for a continuous period of six months immediately preceding the filing of the motion willfully failed to pay a reasonable portion of the cost of care for the children although physically and financially able to do so.

Isaac timely filed a *Notice of Appeal*.[4]

## ANALYSIS

On appeal, Isaac contests all three of the trial court's grounds for terminating parental rights pursuant to N.C.G.S. § 7B-1111(a).

---

[4] Only Isaac appealed from the trial court's order. As Respondent-Mother did not appeal from the trial court's order, the order as it pertains to her remains undisturbed.

> However, an adjudication of any single ground for
> terminating a parent's rights under N.C.G.S. § 7B-1111(a)
> will suffice to support a termination order. Therefore, if
> [the reviewing court] upholds the trial court's order in
> which it concludes that a particular ground for termination
> exists, then [it] need not review any remaining grounds.

*In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (citations omitted); *see also In re J.M.*, 373 N.C. 352, 356, 838 S.E.2d 173, 176 (2020). Here, as one of the trial court's three conclusions is sufficient to terminate Isaac's parental rights, we limit our review to whether the trial court erred in concluding that

> [t]he children have been placed in the custody of [WCHHS]
> and the parents have for a continuous period of six months
> immediately preceding the filing of the motion willfully
> failed to pay a reasonable portion of the cost of care for the
> children although physically and financially able to do so.

¶ 7        N.C.G.S. § 7B-1111(a)(3) provides for the termination of parental rights when

> [t]he juvenile has been placed in the custody of a county
> department of social services, a licensed child-placing
> agency, a child-caring institution, or a foster home, and the
> parent has for a continuous period of six months
> immediately preceding the filing of the petition or motion
> willfully failed to pay a reasonable portion of the cost of
> care for the juvenile although physically and financially
> able to do so.

N.C.G.S. § 7B-1111(a)(3) (2021).[5]  "We review a trial court's adjudication under

---

[5] In this case, the motion to terminate Isaac's parental rights was filed on 15 October 2020, making the relevant time period in relation to N.C.G.S. § 7B-1111(a)(3) 15 April 2020 to 15 October 2020.

N.C.G.S. § 7B-1111 to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re J.M.*, 373 N.C. at 357, 838 S.E.2d at 176 (marks omitted). "The issue of whether a trial court's findings of fact support its conclusions of law is reviewed de novo." *In re J.S.*, 374 N.C. at 814, 845 S.E.2d at 71.

¶ 8 Here, Isaac contests several aspects of the trial court's conclusion that he willfully failed to pay a reasonable portion of the cost of the children's care during the six months at issue. First, he argues the trial court could not consider some of the evidence at trial—namely, the report of the guardian ad litem ("GAL")—because it was not offered or admitted at the termination hearing. Second, Isaac argues the trial court's findings that he was employed and paid nothing in child support were not themselves sufficient to justify termination of his parental rights under N.C.G.S. § 7B-1111(a)(3) because the trial court did not make a finding regarding the specific amount he earned during the statutory time period. Finally, he argues "[t]he only evidence regarding [Isaac's] employment during [the statutory] time period was that[,] between [Isaac's] July and September incarcerations, he told [WCHHS] that he was waiting on his first job from a temporary employment agency." None of these contentions are meritorious.

¶ 9 As to the first contention, Isaac asserts that the trial court could not consider the GAL report because it was not offered or admitted at the termination hearing.

However, the trial court did not need to consider the GAL report to make its finding. The trial court had other "clear, cogent and convincing evidence" concerning Isaac's employment and income before it. *In re J.M.,* 373 N.C. at 357, 838 S.E.2d at 176. At trial, a WCHHS employee testified:

> [COUNTY ATTORNEY:] [WCHHS employee], has he reported to you working anywhere or making any kind of income in 2020?
>
> [WCHHS EMPLOYEE:] So, yes. He—when he was out in between his July and September incarcerations, he reported working at another temporary agency.
>
> [COUNTY ATTORNEY:] Okay. And did he say what his approximate income was or how much—how frequently he was paid? Did he give you any of those details?
>
> [WCHHS EMPLOYEE:] He did not. He said he was waiting to get his first job. But he was—he was employed by the temporary agency. When he and I talked—because he was only about for—about five weeks, he said he had been hired by the temporary agency.
>
> [COUNTY ATTORNEY:] Okay. So he was reporting some income, he just wasn't telling you what it was?
>
> [WCHHS EMPLOYEE:] That's correct.
>
> [COUNTY ATTORNEY:] And that was during the six-month period prior to the filing of the TPR motion; is that right?
>
> [WCHHS EMPLOYEE:] Yes, ma'am.
>
> [COUNTY ATTORNEY:] All right. And, [WCHHS employee], what does it cost per month for Wake County to care for the children?

[WCHHS EMPLOYEE:] So currently we are paying the current caregivers a half four [sic] payment because they're in the process of being licensed. So [Debby], it's $237.50 for the half four [sic] payment.

[COUNTY ATTORNEY:] And for [Florence]?

[WCHHS EMPLOYEE:] Her half four [sic] payment is $290.50.

[COUNTY ATTORNEY:] Okay. [Have the parents] provided any kind of financial support to the agency or offered any payments to the agency while the children have been in foster care?

[WCHHS EMPLOYEE:] The only thing I can find in the record is, is [Respondent-Mother] reported giving [the previous caretaker] a hundred dollars on [6 June 2019].

[COUNTY ATTORNEY:] [6 June 2019]. And that was the only thing that you're aware of?

[WCHHS EMPLOYEE:] That's the only thing I can see in the file that—as far as monetary. She did give [Florence] $20 on her birthday. But that was to [Florence] as a birthday gift.

[COUNTY ATTORNEY:] Okay. But, I mean, separate from the file, [WCHHS employee], you've been the foster care social worker since January 2020. Has either parent provided any other financial support to the kids—or provided any other portion of the cost of care?

[WCHHS EMPLOYEE:] No, no child support or direct payment to myself or to [the foster parent], as far as financial support directly, like money.

The testimony from the WCHHS employee, which was not objected to at trial,

established that Isaac had earned income during the requisite period without any

need for the trial court to refer to the GAL report. We need not consider whether the trial court's review of the GAL report was error because the trial court's finding is supported by other clear and convincing evidence.

¶ 10    Isaac also argues the trial court's findings that he was employed and paid nothing in child support were not themselves sufficient to justify termination of his parental rights under N.C.G.S. § 7B-1111(a)(3) because the trial court did not make a finding regarding the amount he earned during the statutory time period. Isaac is mistaken. "The issue of whether a trial court's findings of fact support its conclusions of law is reviewed de novo." *In re J.S.*, 374 N.C. at 814, 845 S.E.2d at 71. When a trial court finds that a respondent-parent had the ability to pay some amount toward the cost of care of his or her children while in the custody of social services but he or she paid nothing, the trial court is permitted to conclude that this was a willful failure to pay a reasonable portion of the cost of care under N.C.G.S. § 7B-1111(a)(3). *In re J.M.*, 373 N.C. at 359-60, 838 S.E.2d at 178. Evidence of a failure to pay any portion of the cost of care while earning some amount of income is sufficient to conclude that a parent did not pay a reasonable portion of the cost of care. *Id.* at 359, 838 S.E.2d at 178.

¶ 11    Isaac cites *In re Faircloth*, 161 N.C. App 523, 588 S.E.2d 561 (2003), for the proposition that a finding of a parent having been employed and a finding of a parent having paid nothing in child support are not sufficient to show N.C.G.S. § 7B-

1111(a)(3) has been met.  However, *In re Faircloth* is distinguishable from the case at hand because, in that case, the trial court had failed to specifically address the parent's employment during the relevant time frame defined by N.C.G.S. § 7B-1111(a)(3).  *In re Faircloth*, 161 N.C. App. at 526, 588 S.E.2d. 561 at 564.  The evidence in *In re Faircloth* "did not specifically address whether [the mother] was employed at *any* time [during the six months immediately preceding the filing of the motion.]" *Id.* (emphasis added).  Here, while the trial court noted that Isaac's incarceration impacted his employment within the statutory period, there is evidence in the Record specifically addressing Isaac's employment and income at some point during the statutory time period when he was not incarcerated:

> [COUNTY ATTORNEY:] Okay.  So he was reporting some income, he just wasn't telling you what it was?
>
> [WCHHS EMPLOYEE:] That's correct.
>
> [COUNTY ATTORNEY:] And that was during the six-month period prior to the filing of the TPR motion; is that right?
>
> [WCHHS EMPLOYEE:] Yes, ma'am.

Isaac reported earning some income during the six-month period by working jobs for a temporary agency, as was his custom both before and after being incarcerated.  The evidence before the trial court in this case specifically addressed the statutory time period, unlike in *In re Faircloth*.  Isaac's attempt to use *In re Faircloth* to avoid financial responsibility for his children because he was incarcerated during a portion

of the six-month period has no merit when the evidence supports that Isaac was earning income during a portion of the same period while he was not incarcerated.

¶ 12    Finally, as to Isaac's third contention—that "[t]he only evidence regarding [Isaac's] employment during this time period was that[,] between [Isaac's] July and September incarcerations, he told [WCHHS] that he was waiting on his first job from a temporary employment agency"—the evidence at trial contravenes this position. The testimony from the WCHHS employee at the adjudication hearing, *supra* at ¶ 9, provided clear and convincing evidence that supports the trial court's findings that Isaac was employed at some point within the six months preceding the filing of the motion for termination of parental rights and had failed to contribute anything to the financial care of the children even though Isaac had been incarcerated for part of the statutory time period. Furthermore, Isaac had reported earning some income, and there was evidence demonstrating that Isaac worked for a temporary agency before going to prison in July 2020, worked for another temporary agency afterward, and worked for his father's company in 2019.[6]  Although Isaac was not reporting his

---

[6] We note that it was appropriate for the trial court to consider Isaac's physical and financial ability in the near past to determine that Isaac had the ability to provide more than zero dollars toward the care of the children within the six-month time period. *See In re A.P.W.*, 378 N.C. 405, 2021-NCSC-93, ¶¶ 44-45 (finding respondent-mother's nonpayment of a support agreement during the six-month period to be willful where she had "demonstrated an ability to work by multiple reported periods of employment"). In *In re A.P.W.*, the trial court noted: "The [respondent-mother's] employment status is unclear. She has reported work at Lydall, Van Heusen, the Candle Company, and Tyson." *Id.* at ¶ 21. The record in *In*

specific earnings, the trial court had evidence before it that Isaac was employed and earning income in some capacity. Even assuming Isaac's statement made in between his incarcerations about waiting for a job from the temporary agency contradicts the evidence presented by the WCHHS employee about Isaac earning income, "the trial court was not bound to find respondent's evidence to be credible or give it more weight than any other evidence[.]" *In re K.G.W.*, 250 N.C. App. 62, 66, 791 S.E.2d 540, 543 (2016).

¶ 13        Isaac's incarcerations and failure to report a specific amount of income were certainly evidence for the trial court to consider regarding his ability to pay, but they were not the only evidence before the trial court from which it could have determined whether his failure to pay a reasonable portion of his children's care was willful. "We note that it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial." *Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25, *reh'g denied*, 337 N.C. 807, 449 S.E.2d 750 (1994); *see also In re D.E.M.*, 254 N.C. App. 401, 403, 802 S.E.2d 766, 769 (2017) ("It is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given

---

*re A.P.W.* demonstrates that the respondent-mother had reported working at Van Heusen in March 2018, at Lydall in January 2018, and at Candle Company at an unspecified time before August 2018. The petition to terminate parental rights in that case was filed in April 2019.

their testimony."), *aff'd per curiam*, 370 N.C. 463, 809 S.E.2d 567 (2018). The trial court considered the evidence regarding Isaac's incarcerations. Isaac was incarcerated in July of 2020 and again from September 2020 to December 2020. The trial court recognized there was a disruption of his employment due to his incarcerations:

> With regards to [Isaac], he has worked for different labor finder organizations. And, again, the [c]ourt recognizes there was a period of time in which he was incarcerated and he could not have worked during that time. But the evidence is that he provided zero toward the cost of the children.

The trial court was not required to find that Isaac worked throughout the entire six-month period. The trial court's finding that Isaac had the ability to pay something toward the cost of care for his children within the six-month period but paid nothing was sufficient to terminate his parental rights. *See In re J.M.*, 373 N.C. at 359-60, 838 S.E.2d at 178 ("Here, the trial court's findings establish [the] respondent-mother had the ability to pay some amount toward the cost of care for her children while they were in DSS custody but paid nothing. These findings support its conclusion that grounds exist to terminate [the] respondent-mother's parental rights to the children pursuant to N.C.G.S. § 7B-1111(a)(3)."). Although more detailed findings on a parent's ability to pay would generally be helpful in appellate review, the trial court is under no obligation to make specific findings on the amount a parent earns when

the evidence demonstrates a discrepancy between his or her ability to pay and the actual amount paid towards the care of the children while in foster care during the six-month period. *See id.* The trial court's findings of fact support its conclusion of law.

## **CONCLUSION**

The trial court properly concluded it had grounds to terminate Isaac's parental rights under N.C.G.S. § 7B-1111(a)(3) for a willful failure "to pay a reasonable portion of the cost of care for the children although physically and financially able to do so." The trial court's conclusion is supported by its finding that Isaac was employed during the six-month period but did not provide any reasonable portion of the cost of the children's care. This finding is supported by the evidence. Based on what Isaac had reported to her, the WCHHS employee testified that he had earned an unspecified amount of income within the six months preceding WCHHS filing the petition to terminate parental rights. Since this N.C.G.S. § 7B-1111(a) ground adjudicated by the trial court is supported by the evidence, there is no need to review any remaining grounds. *See id.* at 356, 838 S.E.2d at 176 ("[O]nly one ground is needed to terminate parental rights . . . .").

Isaac does not separately contest the trial court's determination at the dispositional stage of the termination proceeding that terminating his parental rights

is in the children's best interest on appeal, so we need not consider it.[7]  Accordingly, we affirm the termination orders as to Isaac.

AFFIRMED.

Judges GORE and GRIFFIN concur.

---

[7] "After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2021).  However, the trial court's conclusion as to best interests at disposition must be challenged separately.  *In re A.P.W.*, 378 N.C. 405, 2021-NCSC-93, ¶ 46.  As Isaac did not contest these conclusions, we do not address them here.